EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

FIRST MIDWEST BANK,
N.A., Defendant.

No. 97 C 8716.

United States District Court,
N.D. Illinois,
Eastern Division.

July 13, 1998.

Jean Powers Kamp, John C. Hendrickson, Michelle Anne Caiola, E.E.O.C., Jose Jorge Behar, E.E.O.C., Chicago, IL, for E.E.O.C.

Michael T. Hannafan, Mark Alan Cisek, Michael T. Hannafan & Associates, Ltd., Chicago, IL, John S. Noble, Weiler & Noble, P.C., Batavia, IL, John W. Noble, Jr., Chicago, IL, for Eileen M. Frank.

Gail Chaney Kalinich, Carol Berlin Manzoni, Keith A. Dorman, Ross & Hardies, P.C., Chicago, IL, for First Midwest Bank, NA.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, the Equal Employment Opportunity Commission ("EEOC"), brought suit against the defendant, First Midwest Bank, N.A. ("First Midwest"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. First Midwest moves to dismiss the complaint, arguing the EEOC did not conciliate in good faith before filing suit. For the following reasons, a sixty day stay is granted so that the parties may attempt conciliation.

### Background [1]

■ On April 16, 1996, Eileen Frank, an employee at First Midwest, filed an EEOC charge of discrimination alleging First Midwest denied her a promotion because of her gender. (Df. Ex. A). On October 7, 1996, Ms. Frank filed a second EEOC charge alleging gender discrimination based on another failure to promote. (Df. Ex. B). The EEOC commenced an investigation of both charges. The EEOC investigator assigned to Ms. Frank's charges, Cheryl Mabry–Thomas, informed First Midwest that the EEOC's investigation would examine First Midwest's promotion of women to the position of Senior Lending Officer or above. (Manzoni Aff. ¶ 5).

On June 17, 1997,[2] Ms. Mabry–Thomas contacted one of First Midwest's lawyers, Neil Wolf, and informed Mr. Wolf the EEOC had decided to issue a Letter of Determina-

tion finding there was "reasonable cause" to believe First Midwest made discriminatory promotion decisions against Ms. Frank as well as against females as a class. (Mabry–Thomas Aff. ¶¶ 3–4). Ms. Mabry–Thomas informed Mr. Wolf First Midwest could submit further evidence in support of its position that discrimination had not occurred. She also discussed the conciliation process with Mr. Wolf and suggested general terms of conciliation. (Mabry–Thomas Aff. ¶¶ 6–7). On June 23rd, Carol Manzoni, another of First Midwest's lawyers, faxed a letter to Ms. Mabry–Thomas requesting a face-to-face meeting to discuss the EEOC's findings. (Manzoni Aff. ¶ 8; Df. Ex. C). On June 27th, Ms. Mabry–Thomas informed Ms. Manzoni the EEOC would not agree to a meeting before the issuance of a Letter of Determination. (Manzoni Aff. ¶ 9).

On June 30th, Ms. Manzoni faxed Ms. Mabry–Thomas a second letter requesting an in-person meeting and objecting to the EEOC's refusal to participate in a face-to-face meeting as against EEOC policy. (Df. Ex. D). On July 10th, Ms. Mabry–Thomas responded to Ms. Manzoni's second fax with a letter. (Df. Ex. E). Ms. Mabry–Thomas stated she was disinclined to participate in a face-to-face meeting to review evidence that had been discussed at great length with Mr. Wolf. Ms. Mabry–Thomas informed Ms. Manzoni that the letter served as the EEOC's final request for additional information before the issuance of a Letter of Determination.

On July 15th, the EEOC issued a Letter of Determination. (Pl. Ex. A). The EEOC found the evidence obtained in the investigation established "reasonable cause" to believe Ms. Frank was discriminated against because of her gender and that First Midwest "discriminate[d] against females as a class in violation of Title VII" in regards to promotions to Senior Lending Officer and Banking Center President. (Pl. Ex. A at 1). The Letter did not provide any information regarding the other women against whom the EEOC believed First Midwest had discrimi-

---

**1.** Although First Midwest's motion is labeled a motion to dismiss, both parties cite exhibits outside of the pleadings to support their position. In deciding a jurisdictional challenge in a Title VII case, a court may consider exhibits outside of the pleadings. *E.E.O.C. v. Sears, Roebuck & Co.,* 504 F.Supp. 241, 245 n. 3 (N.D.Ill.1980).

**2.** From this point forward, all dates, unless otherwise noted, refer to 1997.

nated, when discrimination occurred, or where it occurred. The Letter, signed by John Rowe, District Director of the EEOC, invited First Midwest to take part in conciliation efforts. (Pl. Ex. A at 2).

On July 25th, Ms. Manzoni wrote Mr. Rowe. (Df. Ex. F). Ms. Manzoni again requested an in-person meeting and asked the EEOC to reconsider its findings. Ms. Manzoni informed Mr. Rowe that without any evidentiary understanding of the EEOC's findings, particularly with respect to the class discrimination, it would be difficult for First Midwest to engage in meaningful conciliation efforts. On August 4th, Ms. Mabry–Thomas left a voicemail message for Ms. Manzoni detailing the EEOC's conciliation offer. (Df. Ex. G).[3] The EEOC offered to conciliate Ms. Frank's case and the class case for either: (1) $500,000 or (2) $250,000 plus the President's job for Ms. Frank. Ms. Mabry–Thomas requested a counteroffer or response by the end of the week.

On August 7th, Ms. Mabry–Thomas faxed Ms. Manzoni a letter stating that if First Midwest did not respond to the EEOC's conciliation offer by August 11th, the EEOC would assume First Midwest was not interested in conciliation. (Df. Ex H). Later in the day on August 7th, however, Ms. Mabry–Thomas called Ms. Manzoni and told her to disregard the faxed letter and August 4th conciliation offer because Mr. Rowe had decided to reconsider the Letter of Determination. (Manzoni Aff. ¶ 20). On August 8th, Ms. Manzoni sent another letter to Mr. Rowe. (Df. Ex. I). Ms. Manzoni again requested a face-to-face meeting so that First Midwest could understand the basis of the EEOC's concerns. Ms. Manzoni attempted to reach Mr. Rowe by phone on August 12th, 19th, and 25th. Ms. Manzoni's calls were not returned. (Manzoni Aff. ¶ 22).

Ms. Mabry–Thomas left another voicemail message for Ms. Manzoni on September 11th. (Df. Ex. J). Ms. Mabry–Thomas noted the EEOC had not received a response to its August 22nd letter and wanted to know whether First Midwest was interested in conciliation. Ms. Manzoni faxed Ms. Mabry–

Thomas a letter on September 12th. (Df. Ex. K). Ms. Manzoni informed Ms. Mabry–Thomas that she was still under the impression Mr. Rowe was reconsidering the Letter of Determination and was still interested in a face-to-face meeting to discuss the matter. On September 17th, Ms. Mabry–Thomas responded to Ms. Manzoni's letter with a voicemail message. (Df. Ex. L). The voicemail message indicated Mr. Rowe sent a letter to Ms. Manzoni on August 22nd upholding the findings in the Letter of Determination. Ms. Mabry–Thomas stated that Mr. Rowe rarely gets involved in conciliation efforts and that if a conciliation offer was not forthcoming from First Midwest by September 22nd, the EEOC would assume First Midwest did not have a conciliation proposal.

On September 19th Ms. Manzoni faxed Ms. Mabry–Thomas a letter indicating First Midwest had never received Mr. Rowe's August 22nd letter and that numerous failed attempts had been made throughout the day to reach Ms. Mabry–Thomas to discuss conciliation. (Df. Ex. M). On September 22nd, Ms. Mabry–Thomas faxed Ms. Manzoni a copy of Mr. Rowe's August 22nd letter. (Df. Ex. N). Mr. Rowe's letter stated the EEOC's finding of "reasonable cause" was appropriate and informed First Midwest that Ms. Mabry–Thomas and an EEOC attorney, Jose Behar, would be available during the week of August 25th to meet and discuss conciliation prospects. The basis of the EEOC's findings is not discussed in the letter. On the next day, September 23rd, Ms. Manzoni faxed Ms. Mabry–Thomas a letter indicating First Midwest was now in receipt of Mr. Rowe's August 22nd letter and that First Midwest would like to meet with Ms. Mabry–Thomas and Mr. Behar to discuss conciliation on September 26th, October 1st, or October 3rd. (Df. Ex. O).

Later in the day on September 23rd, Ms. Mabry–Thomas responded to Ms. Manzoni's letter by suggesting September 26th as a meeting day. Ms. Manzoni informed Ms. Mabry–Thomas that September 26th was no longer a good meeting day, but that she was

---

3. For purposes of the motion to dismiss, the EEOC does not contest the accuracy of the transcribed voicemail messages. (Pl. Brief at 2 n. 2).

still available on October 1st and October 3rd. (Manzoni Aff. ¶¶ 30–31). On September 24th, Ms. Mabry–Thomas left Ms. Manzoni a lengthy voicemail message. (Df. Ex. P). Ms. Mabry–Thomas informed Ms. Manzoni the EEOC did not want to extend conciliation efforts into October unless First Midwest was prepared to make a conciliation proposal. Ms. Mabry–Thomas then stated that the EEOC was looking for somewhere in the neighborhood of $2 million dollars for Ms. Frank and $2 million dollars for the female class members. Ms. Mabry–Thomas also indicated the EEOC would not identify class members until First Midwest had put a dollar amount on the table.

On September 25th, Ms. Mabry–Thomas left another voicemail message for Ms. Manzoni. (Df. Ex. Q). Ms. Mabry–Thomas inquired whether there would be a September 26th conciliation meeting and stated that a prerequisite to continuing conciliation discussions into October would be a "serious proposal" by First Midwest. Later in the day on September 25th, Ms. Manzoni responded to Ms. Mabry–Thomas' voicemail with a faxed letter. (Df. Ex. R). Ms. Manzoni reiterated First Midwest's interest in conciliation and in meeting face-to-face with Ms. Mabry–Thomas and Mr. Behar. Ms. Manzoni informed Ms. Mabry–Thomas September 26th was unavailable, but that both October 1st or October 3rd remained good days to meet. Ms. Manzoni stated First Midwest's concern that the EEOC's conciliation proposal had inexplicably moved from $250,000 in early August to $4 million on September 24th. Ms. Manzoni was also interested in getting a formal written proposal from the EEOC.

On September 26th, Mr. Rowe wrote Ms. Manzoni a letter stating the EEOC had determined that conciliation efforts had occurred and failed. (Pl. Ex. B). On December 17th, the EEOC filed this suit against First Midwest on behalf of Ms. Frank and a class of First Midwest's female employees.

### Conciliation

■ The EEOC is statutorily obligated to attempt conciliation once it finds "reasonable cause" to believe discrimination has occurred. 42 U.S.C. § 2000e–5(b). "Only after the EEOC is unable to obtain an acceptable conciliation agreement from the employer may the agency file in court." *E.E.O.C. v. Keco Indus., Inc.,* 748 F.2d 1097, 1101 (6th Cir.1984).

> Conciliation is … a flexible and responsive process which necessarily differs from case to case. The EEOC may make a sufficient initial effort without undertaking exhaustive investigations or proving discrimination to the employer's satisfaction … so long as it makes a sincere and reasonable effort to negotiate by providing an 'adequate opportunity to respond to all charges and negotiate possible settlements.'

*E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1169 (10th Cir.1985) (quoting *Marshall v. Hartford Fire Ins. Co.,* 78 F.R.D. 97, 107 (D.Conn.1978)). The EEOC must make a good faith effort to conciliate. *Keco Indus., Inc.,* 748 F.2d at 1102; *E.E.O.C. v. Zia Co.,* 582 F.2d 527, 533 (10th Cir.1978). Still, the form and substance of the EEOC's conciliation proposals are within the discretion of the EEOC and are not subject to judicial second-guessing. *Keco Indus., Inc.,* 748 F.2d at 1102; *E.E.O.C. v. Acorn Niles Corp.,* No. 93 C 5981, 1995 WL 519976, at *6 (N.D.Ill. Aug. 30, 1995). If a district court finds improper conciliation efforts were made, the appropriate remedy is not dismissal, but a stay of the proceedings so that conciliation between the parties may take place. *Prudential Fed. Sav. & Loan Assoc.,* 763 F.2d at 1169; *E.E.O.C. v. Rymer Foods, Inc.,* No. 88 C 10680, 1989 WL 88243, at *1 (N.D.Ill. July 31, 1989).

■ Based on the evidence presented, the EEOC did not engage in a good faith effort to conciliate its claims. First Midwest made clear before the EEOC issued its Letter of Determination that it sought an in-person meeting to discuss the charges against it. The EEOC informed First Midwest it would not be interested in such a meeting until a Letter of Determination was issued. On July 15th the EEOC issued a Letter of Determination. The Letter indicated that "based on the evidence" the EEOC found "reasonable cause" existed to believe First Midwest discriminated against Ms. Frank and a class of female employees. The letter

did not indicate who was in the class of female employees, when individuals requested promotions, where they requested promotions, or any other information or evidence to allow First Midwest to understand the EEOC's conclusions.

On July 25th, Ms. Manzoni wrote Mr. Rowe requesting a reconsideration of the findings and an in-person meeting. Understandably, Ms. Manzoni indicated it would be difficult to generate a meaningful conciliation proposal without any information about the class of women against whom First Midwest allegedly discriminated. Mr. Rowe never responded to Ms. Manzoni's letter. Rather, on August 4th Ms. Mabry–Thomas gave Ms. Manzoni the EEOC's conciliation offer, which consisted of two options: (1) a monetary settlement of $500,000 or (2) a monetary settlement of $250,000 and a promotion for Ms. Frank. Before First Midwest could respond, Ms. Mabry–Thomas told Ms. Manzoni to ignore the offer because Mr. Rowe had decided to reconsider the Letter of Determination.

Mr. Rowe upheld the "reasonable cause" finding on August 22nd and sent a letter to First Midwest indicating the EEOC was ready to meet face-to-face the following week and discuss conciliation. Ms. Manzoni indicates, however, that she did not know Mr. Rowe had written a letter until September 17th and did not receive a copy of the letter until September 22nd. The EEOC does not dispute this contention. Thus, between August 7th, when Ms. Mabry–Thomas informed Ms. Manzoni that Mr. Rowe was reconsidering the Letter of Determination, and September 17th, First Midwest reasonably believed conciliation negotiations were unnecessary. The EEOC's offer to conciliate during the week of August 25th as set forth in Mr. Rowe's letter is of no consequence since First Midwest did not receive the offer until September 22nd.

First Midwest, however, did not act passively between August 7th and September 17th. Mr. Manzoni sent a letter to Mr. Rowe requesting a face-to-face meeting and thrice called Mr. Rowe to discuss the case or set up a meeting. The day after First Midwest received a copy of Mr. Rowe's August 22nd letter, Ms. Manzoni faxed Ms. Mabry–Thomas a letter that indicated First Midwest's willingness to meet to discuss conciliation and suggested three dates. By the time Ms. Mabry–Thomas called Ms. Manzoni on September 23rd to schedule a meeting, the first suggested meeting date was unavailable but two dates, October 1st and October 3rd, a mere five and seven days later, were still open.

Ms. Mabry–Thomas called back the next day and informed Ms. Manzoni that the EEOC was looking for $4 million to settle the suit and that First Midwest would have to make a "serious proposal" if conciliation efforts were to continue into October. Ms. Mabry–Thomas provided no explanation for why the EEOC's conciliation proposal had skyrocketed and refused to provide First Midwest with any information regarding the class of female employees until First Midwest made a conciliation offer. *See E.E.O.C. v. Hugin Sweda, Inc.,* 750 F.Supp. 165, 167 (D.N.J.1990) (finding the EEOC's conciliation efforts deficient because the EEOC only told the defendant it planned on filing a class action, but refused to provide the defendant with specific information about proposed class members). Further, it is unclear from Ms. Mabry–Thomas' voicemail whether the EEOC's request for $2 million for the female class is for the class as a whole or for each individual class member. (Df. Ex. P). Thus, First Midwest was required to make a conciliation proposal in an evidentiary vacuum.

Whether $4 million to settle this suit is or is not a fair sum is not appropriate for judicial second-guessing. Still, the EEOC's sudden demand for quadruple money damages without any explanation is relevant to its effort at good faith conciliation. See *E.E.O.C. v. Anderson's Restaurant,* No. C–C–86–002–P, 1986 WL 192883, at *5 (W.D.N.C. Apr. 20, 1986) (finding a defendant could not be expected to agree to the EEOC's demand for a large monetary sum without first being provided the basis for such a demand). Although First Midwest had no understanding of why or how the EEOC's demands had changed, the record reflects ongoing interest in meeting to discuss conciliation. The EEOC's response was to present a settlement figure and then request First Midwest to make a serious coun-

terproposal or risk failed conciliation negotiations and a federal lawsuit; all without an understanding of the EEOC's class of female employees or its calculation of damages. This is not the "sincere and reasonable effort to negotiate" required by Title VII. *Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d at 1169.

Additionally, the EEOC provides no explanation for why September was the cut-off date for conciliation negotiations. It appears to be an arbitrary date with no particular meaning and, under the circumstances, there is no reason conciliation negotiations could not have continued into October. First Midwest was entirely unaware that Mr. Rowe had upheld the "reasonable cause" determination until September 17th and did not know its repeated requests for a face-to-face meeting with the EEOC had been accepted until receiving a copy of Mr. Rowe's letter on September 22nd. First Midwest accepted the EEOC's offer to meet, but could only schedule a meeting in the first few days of October. Within four days, the EEOC determined conciliation efforts had failed. This is not a good faith effort by the EEOC given First Midwest's willingness to negotiate. *See E.E.O.C. v. Pet, Inc., Funsten Nut Div.,* 612 F.2d 1001 (5th Cir.1980) (finding the EEOC's decision to withdraw from conciliation discussions while a party was still willing to negotiate was not the type of good faith effort Title VII contemplates) (per curiam); *Hugin Sweda, Inc.,* 750 F.Supp. at 167 (finding the EEOC's conciliation efforts inadequate where the EEOC's failure to meet with defendant "denied the defendant an opportunity to respond to the charges and negotiate a settlement"); *E.E.O.C. v. One Bratenahl Place Condominium Ass'n,* 644 F.Supp. 218, 221 (N.D.Ohio 1986) (finding the EEOC did not conciliate in good faith where the defendant "indicated its willingness to meet and negotiate a conciliation [and] [s]uch a meeting would have provided a forum for the free exchange of ideas and proposals to hopefully reach mutually accepted remedies").

### Conclusion

■ The federal courts are not depositories for the EEOC's lackluster efforts. "The EEOC's compliance with its obligation to conciliate is measured by the effort that it expends." *Hugin Sweda, Inc.,* 750 F.Supp. at 167 (citation omitted). First Midwest was unaware its request for reconsideration had been denied until September 17th and that the EEOC was willing to meet to discuss conciliation until September 22nd. In the four days from September 22nd to September 26th the EEOC quadrupled its monetary demand and determined it would not wait until October 1 to meet with First Midwest. The EEOC's effort indicates a lack of good faith in the conciliation process. Accordingly, this action is stayed for sixty days so the parties may participate in good faith conciliation.