EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

JILLIAN'S OF INDIANAPOLIS, IN, INC., Jillian's Entertainment Corporation, and Jillian's Entertainment Holdings, Inc., Defendant.

No. IP 00–1452–C B/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 16, 2003.

Nancy Dean Edmonds, EEOC, Indianapolis, IN, for Plaintiff.

Brenda H. Feis, Seyfarth Shaw, Chicago, IL, Robert M. Kelso, Kightlinger & Gray, Indianapolis, IN, for Defendant.

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SARAH EVANS BARKER, District Judge.

### I. *Introduction.*

This employment discrimination case tests the latitude that the EEOC enjoys when it seeks to bring a lawsuit that exceeds the scope of the administrative

charges that underlie it. Four men filed sex discrimination charges with the EEOC, all alleging that the Jillian's Indianapolis location discriminated against them on the basis of their gender. The EEOC conducted an investigation limited to the Jillian's Indianapolis site. Conciliation having failed, the EEOC filed a lawsuit alleging that Jillian's Indianapolis discriminated against the four named individuals and similarly-situated others. Fourteen months later, the EEOC filed an amended complaint alleging that Jillian's engaged in a pattern or practice of sex discrimination *nationwide.*

Jillian's seeks summary judgment with respect to the EEOC's nationwide lawsuit because the lawsuit is not like or reasonably related to the charges underlying it, nor did it reasonably grow out of the investigation that the EEOC undertook into Jillian's Indianapolis facility. Jillian's also seeks summary judgment with respect to both the nationwide lawsuit and the action involving the four charging parties (and potentially others) with respect to the Indianapolis location on the ground that the EEOC failed to engage in good faith conciliation.

For the reasons that follow, we GRANT defendants' motion with respect to the EEOC's nationwide pattern or practice action because that action exceeds the scope of the EEOC's investigation. We DENY Jillian's motion with respect to the good-faith conciliation issue in EEOC's action against Jillian's Indianapolis.

## II. *Statement of Facts.*

Although both parties have filed extensive and well-documented statements of fact, we are not concerned with the merits of this case—whether Jillian's discriminated, locally or nationally, on the basis of gender—at this time. Given the posture of the case before us, we are interested only in those facts which are pertinent to three questions: whether the EEOC's na-

tionwide pattern or practice claim is like or reasonably related to the investigation which grew out of the underlying charges of discrimination on which the investigation and the lawsuit are founded; whether Jillian's has waived its opportunity to assert the defense that the EEOC's nationwide action exceeds the scope of its investigation; and whether the EEOC engaged in bad faith conciliation with respect to the charges of discrimination.

Four individuals filed charges with the EEOC alleging that Jillian's of Indianapolis discriminated against them on the basis of their gender: Brett David (charge filed on September 13, 1999), Aaron Jones (charge filed on January 2, 2000), Michael Harvey (charge filed on March 2, 2000), and Nickey Ussery (charged filed on March 3, 2000), all alleged that Jillian's refused to place them in the relatively lucrative positions of waiting on tables, but were, instead, hired or assigned to work as door hosts. Meanwhile, Jillian's hired females to fill the waitstaff positions. Def. Ex. 12, 13, 14, 15.

Based on those four charges, the EEOC conducted an investigation of Jillian's Indianapolis employment practices. On March 20, 2000, the EEOC issued reasonable cause determinations with respect to the four charging parties. Specifically, the EEOC's Determination includes the finding that "there is reasonable cause to believe that Respondent discriminated against Charging Party by hiring members of one sex into a position for which gender is not a qualification, in violation of Title VII." Def. Ex. 15(A). In the same mailing, the EEOC sent to Jillian's Human Resources Director, Barbara Coyne, a draft conciliation agreement seeking to resolve the matter. Def. Ex. 15A.

In what turns out to be the flashpoint of the issue currently before us, on April 14, 2000 the EEOC rescinded its March 20

Determination and issued an Amended Letter of Determination in its place. Def. Ex. 15(B). The Amended determination includes the finding that:

> Respondent maintains or has maintained sex segregated job classifications, including server, host, and hostess. Respondent has failed to hire or transfer Charging Party *and a class of similarly-situated male applicants and employees* to server or hostess duties.

Def. Ex. 15(B) (emphasis added). The EEOC does not challenge Jillian's statement that the agency conducted no further investigation between its March 20 Determination and its April 14 Amended Determination.

To anticipate our analysis, this matter turns on the reasonableness of two competing interpretations of the italicized phrase, "a class of similarly-situated male employees and applicants." Jillian's contends that if suing on behalf of a "class" is permissible at all, it is permissible only with respect to a class of similarly-situated males at Jillian's Indianapolis. The EEOC contends that it may sue on behalf of a class of similarly-situated males nationwide.

Conciliation proving fruitless, on September 18, 2000, the EEOC filed a federal lawsuit naming Jillian's Indianapolis, IN Inc. and Jillian's Entertainment Holdings, Inc. as defendants. The complaint generally alleges that "Defendants have maintained sex segregated job classifications and failed to hire and/or transfer Brett David, Aaron Jones, Nickey Ussery, Michael Harvey and other similarly-situated males to 'female' job classifications because of their sex." Complaint, Intro. ¶. All references in the complaint to the "defendants" refer to "Jillian's of Indianapolis, IN, Inc., a Delaware Corporation," and to "Defendant Jillian's Entertainment Holdings, Inc., a Delaware corporation." E.g.,

Complaint ¶¶ 4, 5. The complaint alleges, more specifically:

• "Defendant employers have maintained sex segregated job classifications for 'server,' 'door host,' and 'hostess' positions and have refused to hire and/or transfer Brett David, Aaron Jones, Mickey Ussery, Michael Harvey and other similarly-situated males to more lucrative 'server' and less demanding 'hostess' positions." Complaint ¶ 9.

• "The effect of the practices complained of in paragraph 9 above has been to deprive Brett David, Aaron Jones, Nickle Ussery, Michael Harvey and other similarly situated males equal employment opportunities and otherwise adversely affect their status as employees." Complaint ¶ 10.

Fourteen months later, on November 13, 2001, the EEOC filed an Amended Complaint, which alleges in pertinent part that:

• "As alleged in greater particularity in paragraph 11 below, the Commission alleges that Defendants have maintained sex segregated job classifications *on a nationwide basis* and have failed to hire and/or transfer Brett David, Aaron Jones, Nick Ussery, Michael Harvey, and *other similarly-situated males* to 'female' job classifications because of their sex." Amended Complaint Intro. ¶ (emphasis added).

• "Defendant Employers have maintained sex segregated job classifications for 'server,' 'door host' and 'hostess' positions *on a nationwide basis.* ..." Amended Complaint ¶ 11 (emphasis added).

### III. *Discussion.*

#### A. *The Standard on Summary Judgment.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in his favor on a material question, then the court must enter summary judgment against him." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505 (2002).)

■■■ Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge,* 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi,* 123 F.3d 956, 962 (7th Cir.1997).

If genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Waldridge,* 24 F.3d at 920.

B. *Jillian's Motion for Summary Judgment on the Scope of Investigation.*

Jillian's seeks summary judgment on two different issues. First, it seeks summary judgment on the EEOC's nationwide pattern or practice claim because the EEOC's amended complaint is not predicated on an investigation that reasonably arose from the underlying charges. The EEOC argues, in turn, that even if we find that its Amended Complaint exceeds the scope of its investigation, Jillian's has waived its opportunity to assert such a defense because it did not plead the defense with sufficient specificity and then engaged without objection in nationwide discovery. We examine these arguments in subsections B(1) and (2) below. Second, it seeks summary judgment as to both nationwide and local claims on the ground that the EEOC did not engaged in good faith conciliation. We address that issue in subsection C below.

1. *The EEOC's Nationwide Claim.*

■■ As a preliminary matter, we restate the obvious. In order to initiate a lawsuit pursuant to Title VII, a plaintiff— including the EEOC when it is acting on charges filed by one or more individuals[1]

---

1. The EEOC may also proceed on the basis of a Commissioner's charge, a procedure that is

inapplicable here. 42 U.S.C. § 2000e–5(b).

—must file a charge of discrimination with the EEOC. Although filing a timely charge is not jurisdictional, it is an administrative prerequisite.

■ It is well settled that a Title VII lawsuit may contain only allegations that are "like or reasonably related" to the underlying charges. Claims are not alike or reasonably related unless there is a factual relationship between them. "In other words, the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). There are two salutary purposes to the like-or-reasonably-related requirement. One is to put the employer on notice that there are allegations of discrimination pending against it. The second is to permit the EEOC to resolve the matter "through conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). *Peters v. Renaissance Hotel Operating Company,* 307 F.3d 535, (7th Cir.2002); *Haugerud v. Amery School Dist.,* 259 F.3d 678, 689 (7th Cir.2001).

Although there is abundant case law addressing the latitude that the EEOC enjoys in investigating charges of discrimination and eventually filing lawsuits, the specific issue before us—involving the relationship between the scope of the EEOC's investigation and its eventual lawsuit—is one of first impression. In *EEOC v. Harvey L. Walner & Associates,* 91 F.3d 963, 968 (7th Cir.1996), the Seventh Circuit summarized the four basic steps in the EOC's administrative process: (1) a complaining individual files a charge of discrimination; (2) the EEOC undertakes an investigation of the charge; (3) if the EEOC finds reasonable cause to believe the employer has violated Title VII, it seeks to resolve the matter through "conference, conciliation, and persuasion"; (4) failing conciliation, the EEOC may bring a lawsuit in its own name.[2] *Quoting* 42 U.S.C. ¶ 2000e–5(b). In this scenario, our inquiry focuses on the step between the EEOC's investigation and its lawsuit.

■ It is well settled that the EEOC's investigation must occur within the "scope of the charge"—that is, it must reasonably grow out of the charge underlying it. It is also well settled that a lawsuit must be like or reasonably related to the underlying EOC charge. We conclude here that the same reasonableness standard governs the relationship between the EEOC's eventual lawsuit and the investigation that gave rise to it. In other words, the eventual lawsuit must arise from the "scope of the investigation."

Each step along the administrative path—from charge to investigation and from investigation to lawsuit—must grow out of the one before it. Thus, in *Vela v. Village of Sauk Village,* 218 F.3d 661, 664 (7th Cir.2000), the Seventh Circuit noted that the "claim in a civil action need not be a replica of a claim described in the charge, but there must be 'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and *it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge."* *Quoting Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994) (emphasis added). Although *Saulk* involved an individual's lawsuit pursuant to a Right to Sue Notice, the same reasoning applies to a lawsuit in which the EEOC is the plaintiff.

**2.** Two caveats are in order. First, we describe the process when the result is a lawsuit brought by the EEOC in its own name. More frequently, the EEOC will issue a Right to Sue Notice, permitting individual charging parties to proceed to federal court. Second, nothing prevents the EEOC from offering to conciliate before arriving at a determination.

*See, EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir.1996); *EEOC v. Dial Corporation*, 156 F.Supp.2d 926, 938 (N.D.Ill.2001).

The EEOC should enjoy fairly wide latitude in conducting its investigations, perhaps especially when it is investigating an alleged pattern or practice violation. But it is, after all, conducting an investigation into *charges* brought either by individuals or by a Commissioner: the purpose of an investigation is to ascertain whether "there is reasonable cause to believe that *the charge* is true . . . ." 42 U.S.C. § 2000e–5(b) (emphasis added). The conclusion would seem inescapable: the EEOC's eventual lawsuit must bear a reasonable relationship both to the underlying charge and to its investigation.

Accordingly, although the parties have tended to use the phrase "scope of the charge" to concentrate attention on the issue here, we more properly focus on the "scope of the investigation." As the Seventh Circuit noted in *Walner*, to further its activity in the public interest, "EEOC may allege in a complaint whatever unlawful conduct it has uncovered *during the course of its investigation,* provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint." *Walner*, 91 F.3d at 968 (emphasis added). *Also see, O'Rourke v. Continental Casualty Co.*, 983 F.2d 94, 97 (7th Cir.1993) ("issues implied by a charge and communicated to the employer *in the course of investigation* can enlarge the set of claims open to litigation") (emphasis added), *citing Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (en banc). Similarly, The Sixth Circuit recently stated that its "general rule" is that a "judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 380 (6th Cir.2002) (internal citations omitted).

These formulations are designed to accord the EEOC *more* latitude, rather than *less*. Thus, the EEOC "may, to the extent warranted by an investigation reasonably related in scope to the allegations of the underlying charge, seek relief on behalf of individuals beyond the charging parties *who are identified during the investigation.*" *United Parcel Serv.*, 94 F.3d at 318 (emphasis added), citing *Cheek*, 31 F.3d at 500. The investigation may lead not only to individuals beyond the charging parties, but also to allegations beyond those originally charged. As the Sixth Circuit noted, "pursuant to this rule, we have recognized that 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Weigel*, 302 F.3d at 380, *quoting Davis v. Sodexho, Cumberland College Cafeteria,* 157 F.3d 460, 463 (6th Cir.1998).

■ In all of these instances, the relationship between the complaint and the scope of the investigation is central. Accordingly, we inquire here whether the EEOC's nationwide pattern or practice complaint was the product of the investigation that reasonably grew out of the underlying charges. We conclude that it was not. The *nationwide* class named in the EEOC's Amended Complaint is not reasonably anticipated in its investigation into the four charges filed against Jillian's Indianapolis. The EEOC's investigation of the four charges was conducted entirely with respect to Jillian's Indianapolis. Its Amended Complaint, alleging a nationwide class, has insufficient basis in its actual investigation.

Our conclusion is based on Jillian's unchallenged statements, supported by admissible evidence.

• During the course of its investigation, the EEOC did not investigate any Jillian's facility other than Indianapolis. Def. Facts ¶ 18.

• During its investigation, the EEOC sought and received information and documents relating only to the Indianapolis club. Such information included PAY-MAXX job codes for all jobs at "Jillian's of Indianapolis," personnel files and applications for employees and applicants at the Indianapolis club, and "the total number of employees who at any time had worked at *Jillian's of Indianapolis.*" Def. Facts ¶¶ 19–20.

• On February 17, 2000, the EEOC asked Jillian's to clarify parts of its response to the EEOC's request for additional information. In that letter, the EEOC neither sought information about employees at facilities other than Indianapolis, nor objected to Jillian's production of information limited to the Indianapolis club. Jillian's responded to the clarification request by producing information relating only to Jillian's Indianapolis. Def. Facts ¶¶ 21–22.

• During its investigation, the EEOC conducted interviews of employees or applicants only of the Indianapolis club. The only management employee the EEOC ever sought to interview was Josh Berger, the General Manager of the Indianapolis club. Def. Facts ¶ 23.

• Particularly significant in view of the EEOC's effort to sue on behalf of a nationwide class, the EEOC also conducted and attempted to conduct numerous interviews with witnesses they deemed "Potential Class Members," all of whom were either applicants or employees at the Indianapolis club. Def. Facts ¶ 23.

• As we noted earlier, on March 20, 2000, the EEOC sent Jillian's reasonable cause determinations with respect to each of the four individual charges. Each recited in pertinent part:

Based on the Commission's investigation, the evidence shows that Charging Party was hired as a Door–Host rather than a Server. The Investigation further revealed that Respondent hires Servers who are almost exclusively female, overlooking male applicants with as much or more experience in the position as the successful female applicant. Therefore, there is reasonable cause to believe that Respondent discriminated against Charging Party by hiring members of one sex into a position for which gender is not a qualification, in violation of Title VII.

Def. Facts, ¶ 28.

• As we also previously noted, the EEOC attached proposed conciliation agreements to each of its reasonable cause determinations. Def. Ex. 15(A). The conciliation agreements sought relief only for the individual charging party to whom it referred and not on behalf of any putative class. *Id.*

• Then on April 14, 2000, the EEOC rescinded its March 20, 2000 reasonable cause determinations and enclosed an amended reasonable cause determination, along with a new conciliation agreement, this time alleging a nationwide class of similarly-situated males. Def. Ex. 15(b). It is undisputed that the EEOC conducted no further investigation between March 20 and April 14. Nor did it explain what prompted it to rescind the March 20 determination and issue the amended one. We see insufficient basis in the record to support the amended determinations and conciliation agreement. It follows that we find insufficient basis in the record to support the nationwide class.

It was only after conducting discovery with respect to its original complaint that the EEOC decided to expand its lawsuit to include a nationwide class. The Seventh Circuit approached this issue in *Walner,*

where it impliedly distinguished between facts gathered during the scope of an investigation and facts gathered during the discovery phase of an already-filed lawsuit. "We wholeheartedly agree with EEOC's point that it may obtain relief for instances of discrimination that it discovers *during an investigation* of a timely charge.... However, these investigations may not be accomplished through a process of discovery that follows a complaint based upon an insufficient charge of discrimination." Id. at 971–972 (emphasis added). We conclude that the same standard must be applied to the relationship between the lawsuit and its underlying *investigation* as is applied to the relationship between the lawsuit and its underlying *charge.*

We are unpersuaded by the EEOC's evidence that Jillian's knew or should have known that it was subject to a nationwide class action, since virtually all of that evidence is the product of discovery that occurred after it closed its investigation and filed its lawsuit. Thus, for example, perhaps the EEOC's strongest evidence that Jillian's was aware of its potential exposure to a nationwide class action was the testimony of HR Director Barbara Coyne that she discussed the potential for a nationwide class with Jillian's managers in locations other than Indianapolis. Ms. Coyne testified: "I was trying to verify if this was—was, A, a legitimate issue; B, was it just in Indianapolis; C, could it be something that was apparent in other locations. I was just simply trying to make a determination as to what was going on." Pl. Facts, ¶ 78. But EEOC elicited this information from Ms. Coyne during her deposition taken during discovery; it did not seek such information during the course of its investigation.

Similarly, Ms. Coyne drafted a memo dated March 6, 2000 stating:

> I hate always being the bearer of bad news but today we have received our third EEOC charge against the Indy location alleging discrimination for not hiring male servers. It is apparent to both Pam and I(sic) that we are being set up for a class action case. Don't know when but it's gonna happen but I feel very sure it WILL happen and I don't want it to be a surprise to any of you. I understand we do have female servers in all our locations, as of this writing? (sic)

(Monica Guest Aff. ¶ 5, Ex. C). The EEOC received this e-mail memo on December 12, 2002, in response to its Sixth Request for Production of Documents. It did not seek such information during the course of its investigation.

In sum, we conclude that the EEOC's allegation of a nationwide class in its Amended Complaint did not reasonably grow out of its investigation. Accordingly, neither the underlying charges nor the EEOC's investigation into those charges put Jillian's on notice that it was subject to a nationwide class action alleging gender discrimination. Nor did the EEOC seek conference, conciliation or persuasion with respect to a nationwide class.

■ This is not to say that the EEOC's pattern or practice claim involving other "similarly-situated" males is invalid with respect to Jillian's Indianapolis. We quoted *United Parcel* for the proposition that the EEOC may, during the course of its investigation, legitimately find—and name in its eventual complaint—similarly-situated others not named in the underlying charge, so long as the investigation grows reasonably from the charge. *Also see, e.g., Keco Indus. Inc.,* 748 F.2d at 1101 ("[Since the] later class-based claim brought by the EEOC could have reasonably been expected to grow out of [the charging party's] individual complaint of discrimination, no new additional proceedings were necessary."), *quoted in EEOC v. Dial Corpora-*

*tion,* 156 F.Supp.2d 926, 938 (N.D.Ill); *EEOC v. General Motors Corp.,* 826 F.Supp. 1122, 1127 (N.D.Ill.1993) ("the EEOC may properly bring a claim based on discrimination against a class of individuals where such a claim arises out of the investigation of an individual charge.").

In his well-considered opinion in *Dial,* Judge Urbom addressed in detail the manner in which the EEOC's investigation of an individual's charge may expand into a class-wide, pattern or practice lawsuit. 156 F.Supp.2d at 937–38. Dial sought to dismiss the EEOC's pattern or practice claim because, among other reasons, it was not based on a charge in which class-wide discrimination was alleged. Consistent with the case law previously cited, Judge Urbom held that the original charge need not have expressly named a class of individuals, so long as the eventual complaint grew out of the investigation during which the class-wide claims became apparent.

Two points distinguish our facts from *Dial.* First, in *Dial,* the EEOC's lawsuit grew out of its investigation into the original charge, whereas here the lawsuit against a nationwide class appears to be *sui generis.* Second, here the EEOC seeks to expand the scope to similarly-situated others *nationwide,* whereas in *Dial* the EEOC's pattern or practice allegations were apparently limited to Dial's Aurora, Illinois facility.[3] Our decision here is, thus, consistent with *Dial.* We permit the pattern or practice case to go forward on behalf of "similarly-situated" other males, but only such similarly-situated others who are identified in some way with Jillian's Indianapolis.

We said earlier that the central issue here turns on two competing interpretations of the phrase "a class of similarly-situated male employees and applicants,"

which appears in the EEOC's Amended Determination. The EEOC seeks to bootstrap this language in its Amended Determination into its nationwide class. Jillian's argues that the most the EEOC can reasonably expect is to assert a class of similarly-situated males who allegedly suffered gender discrimination at Jillian's Indianapolis.

Jillian's correctly points out that the "class" EEOC appears to have been referring to all along was the *local* class. This view is supported by the fact that the revised, April 14, conciliation agreement provided that the parties would attempt to locate class member by posting advertisements in Indianapolis-based publications: the *Indianapolis Star,* the *Indianapolis Recorder,* and *NUVO.* Def. Ex. 15(B), Part IV, "Unidentified Class Members." The only "unidentified class members the conciliation agreement could have hoped to reach were those in the Indianapolis area". Thus, while we have concluded that the EEOC's nationwide class did not reasonably grow out of its investigation, we also conclude that the EEOC may proceed with the class of similarly-situated males as interpreted by Jillian's.

For these reasons, we GRANT Jillian's motion for summary judgment with respect to the EEOC's nationwide pattern or practice claim.

2. *Waiver.*

The EEOC argues that, if we find that its nationwide allegation exceeds the scope of its investigation, Jillian's has waived that defense for two reasons: first, it did not plead the defense with sufficient specificity; and second, it acceded to nationwide discovery. We find little merit in either argument.

---

**3.** We say "apparently" limited to Aurora because there is no indication that the EEOC sought to expand its lawsuit to include a nationwide class.

First, Jillian's did plead scope of the charge as an affirmative defense with sufficient specificity. In its First Amended Answer of September 12, 2001—filed before the EEOC amended its answer on November 14, 2001—Jillian's listed among its affirmative defenses:

The Complaint should be dismissed to the extent that it asserts claims on behalf of persons who failed to satisfy the administrative prerequisites necessary to asserting such claims. Aff. Def. ¶ 4. The Complaint should be dismissed to the extent that it asserts claims on behalf of persons who have failed to bring their claim within the applicable statute of limitations. Aff. Def. ¶ 8.

Additionally, in its Amended Complaint, ¶ 10, the EEOC alleges that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled." In its Answer, Jillian's denied that allegation. Finally, in the parties' Revised Case Management Plan, approved on July 8, 2002, Jillian's again raised the scope of the charge defense:

To the extent the Complaint alleges unlawful employment practices which are beyond the scope of the charges filed with the Equal Employment Opportunity Commission, such claims are barred.

These were unmistakable challenges to the EEOC's class-wide allegations—challenges even to an Indianapolis-based class, much less a nationwide one. It clearly should have called the EEOC's attention to Jillian's willingness to seek either dismissal or summary judgment as to claims on behalf of unnamed individuals, regardless of EEOC's opinion as to the merits of such an argument. EEOC did pose interrogatories to Jillian's questioning several of its other affirmative defenses. Def. Supp. App. Tab 16 (Interr.No.8, 9,10). It obviously could have used the same technique to ferret out Jillian's challenge to the relationship between the allegations contained in the complaint and the scope of the charge and/or investigation.

■ EEOC's argument that Jillian's waived its affirmative defense by acceding to nationwide discovery fares no better. Although we have found that Jillian's did plead its affirmative defense with sufficient particularity, it is by no means clear that it needed to do so. Where, as here, the affirmative defense goes to the failure of the plaintiff to satisfy a condition precedent—satisfaction of an administrative requirement—the Seventh Circuit has held that: "A defendant may raise the issue of non-performance of a condition precedent prior to trial by way of a motion for summary judgment, in which case the Court may determine the issue." *Stearns v. Consol. Management, Inc.*, 747 F.2d 1105, 1112 (7th Cir.1984), quoted with approval in *Heights Driving School, Inc. v. Top Driver Inc.*, 2002 WL 31424544 at *8 (6th Cir. Oct.8, 2002).

Finally, given our experience with parties seeking to avoid discovery without orders to compel it, we note our reluctance to penalize a party for *providing* requested discovery; that is, for *producing* documents and *answering* questions! We are particularly reluctant to penalize it by permitting EEOC to proceed with a nationwide class action which exceeds the scope of its investigation on the ground that Jillian's complied with the EEOC's discovery requests.

For these reasons, we decline the EEOC's invitation to find that Jillian's waived its challenge to the nationwide class allegations.

*C. Good Faith Conciliation.*

■ Jillian's argues that we should dismiss the EEOC's complaints—both nationwide and local—because the EEOC breached its obligation to conciliate in good faith. We have already disposed of the

nationwide class allegations on other grounds. We decline to dismiss the claims against Jillian's Indianapolis on the basis that it failed to engage in good faith conciliation because there is, at the very least, a genuine issue of material fact as to whether it did. Stated less charitably, it is not clear as a matter of fact whether either party or both engaged in take-it-or-leave it "conciliation."

The EEOC is, indeed, obligated to conciliate in good faith. *EEOC v. O'Grady,* 857 F.2d 383, 392 (7th Cir.1988); *EEOC v. Dial Corp.,* 156 F.Supp.2d at 940; *EEOC v. First Midwest Bank,* 14 F.Supp.2d 1028, 1031 (N.D.Ill.1998). As Judge Urbom observed in *Dial,* however, conciliation is " 'a flexible and responsive process which necessarily differs from case to case.' " It stays within the bounds of good faith "so long as it makes a sincere and reasonable effort to negotiate by providing an 'adequate opportunity to respond to all charges and negotiate possible settlements.' " 156 F.Supp2d. at 940 (internal citations omitted). Our role in reviewing the conciliation process is limited so long as "the form and substance of the EEOC's conciliation proposals" are within the agency's discretion and, therefore, immune from judicial second-guessing. *Id.*

Jillian's alleges, supported by evidence, that the parties met in conciliation on one occasion for twenty minutes. Jillian's representatives suggested why, according to its own findings, the EEOC was overvaluing the case. They made clear that they wanted to engage in "meaningful" discussions about back pay. They faced a stone wall. Def. Facts, ¶¶ 40–44.

Meanwhile, the EEOC argues, also supported by evidence, that

> A Jillian's attorney interrupted [EEOC Director Danny] Harter and stated she was very busy and wanted to make sure that he understood Jillian's position. She then referenced the "Hooters" case,

said that Jillian's viewed the EEOC's case against it as a "nuisance value case," and indicated that Jillian's did not wish to discuss compensatory or punitive damages. Harter responded that the EEOC did not view the case as a "nuisance value" case and was seeking the remedies outlined in the conciliation agreement.

Pl. Facts, ¶¶ 93–94 (internal references omitted). Conciliation on the brink of failure, "Jillian's attorney Pam Greenwell stood up and stated 'you go ahead and do what you have to do.' " Pl. Facts ¶ 95.

The parties valued the case differently and adopted adamant positions. The rigidity and the brevity of their discussions notwithstanding, we cannot say as a matter of law that the EEOC failed to engage in good faith conciliation.

### IV. *Conclusion.*

For the reasons discussed, we GRANT defendants' motion for summary judgment as to the EEOC's nationwide pattern or practice claim, but DENY their motion with respect to whether the EEOC exercised good faith in conciliation efforts. The effect of our holding is that the EEOC's action with respect to Jillian's Indianapolis—on behalf of the four named charging parties and similarly-situated male employees and applicants of Jillian's Indianapolis—is still pending before the court.

It is so ORDERED this ___ day of June 2003.