MURPHY, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent from the majority’s conclusion that the EEOC failed to fulfill its litigation prerequisites in this case and the resulting dismissal of trial worthy sexual harassment claims. The majority imposes a new requirement that the EEOC must complete its presuit duties for each individual alleged victim of discrimination when pursuing a class claim. This rule places unprecedented obligations on the EEOC and in effect rewards CRST for withholding information from the Commission. In addition I dissent from the holding that CRST’s lead drivers are not supervisors of the women trainees assigned to their long haul trips. In other respects I join in the majority opinion.
The EEOC was drawn into this case by Monika Starke’s charge that she was sexually harassed while employed by CRST. The Commission then asked CRST “whether any other individual has complained” about sexual harassment at the company. Although many women had reported harassment by trainers or codrivers during long haul trips, CRST furnished to the Commission only two names. The EEOC eventually discovered that several hundred women employees claimed severe sexual harassment by CRST male trainers or driving partners during extended over the road trips. Their allegations against the truck drivers included claims of sexual propositioning, sexual assault, and rape. As the EEOC’s investigation continued, it learned that CRST had originally taken minimal action in response to the women’s reports of harassment.
During the course of the Title VII preli-tigation process, the EEOC put CRST on notice that it was investigating a class of women employees and requested the company’s help in identifying class members. See 29 C.F.R. § 1601.15 (explaining EEOC’s investigative authority). The *696 Commission informed CRST that it had found “reasonable cause to believe that [the company had] subjected a class of employees and prospective employees to sexual harassment.” See 42 U.S.C. § 2000e-5(b) (directing Commission to issue reasonable cause determination after investigation). Subsequently the EEOC gave CRST an opportunity to achieve voluntary compliance despite the company’s late response to the Commission’s invitation to conciliate. See id. (stating that the Commission “shall endeavor to eliminate any ... alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion”). During the conciliation process the EEOC informed CRST that it did not have access to the number of class members or their names and needed the company’s help to identify these individuals. CRST rejected this proposal, responding that the damage amount sought by Monika Starke made it “confident that conciliation will not result in a resolution of this matter.” Thus unable to obtain cooperation from CRST, the EEOC proceeded with this lawsuit.
Neither Title VII nor our prior cases require that the EEOC conduct its presuit obligations for each complainant individually when litigating a class claim. Rather, we have required that the EEOC perform these duties for each type of Title VII violation alleged by the complainant. EEOC v. Delight Wholesale Co., 973 F.2d 664, 668-69 (8th Cir.1992). Other circuit courts have similarly held that the “nature and extent” of the EEOC’s investigation is beyond the scope of judicial review and that the EEOC need not separately conciliate individual class members when pursuing a class based sexual discrimination claim. EEOC v. Keco Indus., Inc., 748 F.2d 1097, 1100-01 (6th Cir.1984); see also EEOC v. Rhone-Poulenc, Inc., 876 F.2d 16, 17 (3d Cir.1989) (noting in ADEA case that EEOC need not conciliate individual class members); Dinkins v. Charoen Pokphand USA, Inc., 133 F.Supp.2d 1237, 1245-46 (M.D.Ala.2001) (noting that “[w]hat matters is that EEOC served [the employer] notice that it was investigating possible discrimination against a class of women” and that the EEOC need not “conciliate each individual’s Title VII claim separately”).
The cases relied on by the majority are not to the contrary. They require only that the EEOC give the employer notice during the administrative process of the nature and scope of the claim, not of the names of each potential class member. For example, in EEOC v. Jillian’s of Indianapolis, Inc., the court allowed the EEOC to proceed on behalf of a local class even though it had not named each individual in the reasonable cause determination or conciliated individual class members because the employer had notice that the EEOC was investigating a local class. 279 F.Supp.2d 974, 983 (S.D.Ind.2003). It dismissed the nationwide class claims however because the employer had not had notice that the EEOC’s investigation was national in scope. Id. Similarly, the court in EEOC v. Dillard’s Inc. stated that the EEOC “is not required to identify every potential class member” before filing suit but permitted the EEOC to litigate only local class members’ claims because the “scope of its pre-litigation efforts [was] limited” to one store location. No. 08-CV-1780, 2011 WL 2784516, at *6-8 (S.D.Cal. 2011).
The majority’s new requirement that the EEOC separately investigate and conciliate each alleged victim of discrimination is inconsistent with the purpose of Title VII. Under this standard employers can avoid disclosure to the EEOC of complaining workers while the Commission is conducting its investigation and conciliation, then reveal the names during court ordered dis *697 covery, and seek dismissal of the entire case on the ground of inadequate presuit efforts by the EEOC. This punishes the EEOC for employer recalcitrance and weakens its ability to enforce Title VII effectively. It also frustrates the underlying goal of the 1972 amendments intended to strengthen the EEOC’s enforcement powers. See Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 325,100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). The undesirable effects of a rule requiring the EEOC to investigate and conciliate each victim are illustrated in this case. The dismissal of scores of women claimants with apparent trial worthy claims is affirmed by the majority even though it was CRST which ended the conciliation process and even though the EEOC made substantial efforts to investigate and conciliate prior to filing its lawsuit.
While the majority justifies the dismissal by citing Title VU’s emphasis on administrative resolution of disputes, here the EEOC made genuine efforts to resolve the dispute administratively and it was CRST that thwarted administrative resolution by providing the EEOC with incomplete information and rejecting its conciliation proposal. Given the EEOC’s substantial presuit efforts, the district court’s dismissal of trial worthy claims on the ground that the EEOC failed to complete its statutory duties should be reversed. At most, the case might have been stayed for further conciliation. Cf. EEOC v. KLingler Elec. Corp., 636 F.2d 104, 107 (5th Cir.1981) (finding summary judgment “far too harsh a sanction to impose on the EEOC even if the court should ultimately find that conciliation efforts were prematurely aborted”).
Finally, I respectfully disagree -with the conclusion that the company’s long haul trainers are not supervisors of the women trainees. In Faragher v. City of Boca Raton, the Supreme Court assumed that two employees were supervisors where they had been “granted virtually unchecked authority over their subordinates, directly controlling and supervising all aspects of [the alleged victim’s] day-to-day activities.” 524 U.S. 775, 808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal quotations and punctuation omitted). It observed that the alleged victim had been “completely isolated” from her employer’s higher management. Id. (citation omitted). Like the supervisors in Faragher, the CRST long haul trainers controlled almost all of a trainee’s day to day activities, including when she was permitted to drive, when she could stop to use the bathroom, and when she could use the truck’s satellite device to communicate with the outside world. The trainees were often confined in a truck for 28 consecutive days with their trainer who had authority to evaluate their progress and whose pass/ fail rating was relied on by CRST in determining whether trainees would be promoted to full driver status. This unique environment facilitated the ability of certain trainers to make sexual propositions and demand sexual favors.
The tangible employment action cases cited by the majority involve situations where the harassers exercised less control over employment decisions than the trainers did in this case. See Cheshewalla v. Rand & Son Const. Co., 415 F.3d 847, 851 (8th Cir.2005) (harasser “may have consulted” with management on tangible employment action); Weyers v. Lear Operations Corp., 359 F.3d 1049, 1057 (8th Cir.2004) (termination decision based “in part” on alleged harasser’s performance evaluation). Here, the lead drivers’ pass/fail evaluations were relied on almost exclusively in deciding whether to promote a particular trainee. The fact that their promotion recommendations were nearly always followed weighs in favor of characterizing them as supervisors. See Burlington *698 Indus., Inc. v. Ellerth, 524 U.S. 742, 747, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (assuming harasser was supervisor although his hiring and promotion decisions were “subject to the approval of his supervisor, who signed the paperwork”). The record reveals that even CRST’s human resources director characterized the trainers as “really no different than ... supervisors.”
The district court’s analysis overlooked the practical reality created by the relationship between the trainer and the trainee in living and working together in the confined space of a truck over long routes and by the unusual level of control the trainers exercised over every aspect of the trainees’ existence while on the road. The isolated work environment, trainees’ extended time alone with the trainer, the lack of oversight from company management, the trainers’ near total control over trainees’ daily lives, and the trainers’ substantial control over trainees’ promotion chances are sufficient to categorize the trainers as supervisors. The cases cited by the majority on this subject dealt with quite different factual circumstances not relevant to the unique factors present here. I would reverse the district court’s ruling that none of the trainers were supervisors and the resulting dismissal of certain trainees’ claims and remand those claims for consideration of whether CRST made out an Ellerbhr-Famgher affirmative defense.
I concur in the other parts of the majority decision, including the remand of the claims of Starke and Jones and the reversal of the unprecedented $4.5 million attorney fee award against the EEOC in favor of CRST. On remand any fee award against the EEOC should be closely considered since one should be made only in “very narrow circumstances.” E.g. Marquart v. Lodge 8S7, 26 F.3d 842, 848 (8th Cir.1994); see also Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); EEOC v. Trans States Airlines, Inc., 462 F.3d 987, 996 (8th Cir.2006) (affirming denial of attorney fee award against EEOC despite employer contention that it failed to conciliate).
In sum, the dismissal based on the conclusion that the EEOC failed to fulfill its presuit duties should be reversed, as should the conclusion that none of CRST’s trainers were supervisors. While this is admittedly a complex case, the court should still give effect to Title VII and ensure that the EEOC can fulfill its congressional mandate.