**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**ROCK–TENN SERVICES COMPANY, INC., Defendant.**

**Civil Action No. 3:10–CV–1960–B.**

United States District Court, N.D. Texas, Dallas Division.

Aug. 22, 2012.

---

Joel Philip Clark, Meaghan Leigh Shepard, EEOC-Dallas District Office, Robert A. Canino, Jr., Suzanne M. Anderson, Equal Employment Opportunity Commission, Dallas, TX, for Plaintiff.

Ryan Griffitts, Edward F. Berbarie, Frederick J. Barrow, Kevin S. Mullen, Littler Mendelson, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

JANE J. BOYLE, District Judge.

Plaintiff, the Equal Employment Opportunity Commission ("EEOC") filed this suit against Defendant Rock–Tenn Services Company, Inc. ("Rock–Tenn") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a. Generally, in its Amended Complaint (doc. 3) the EEOC alleges that RockTenn discriminated against former employee Michael Scott and similarly situated employees by subjecting them to harassment thereby creating a racially hostile work environment.

Each party has filed a motion for summary judgment. The EEOC, in its Motion for Partial Summary Judgment (doc. 91), argues that it is entitled to summary judgment on a variety of RockTenn's affirmative defenses. Rock–Tenn, in its Motion for Summary Judgment (doc. 95), moves for summary judgment maintaining that the EEOC failed to properly conciliate its claims prior to suit, and that the EEOC's cannot prove its harassment claim on the merits. Rock–Tenn also moves for summary judgment on Plaintiff Michael Scott's claims individually under the doctrine of judicial estoppel because of Scott's previous position in his Chapter 13 bankruptcy proceeding. For the following reasons the Court finds the EEOC's Motion for Partial Summary Judgment should be, and hereby is **GRANTED in part** and **DENIED in part**. The Court also finds Rock–Tenn's Motion for Summary Judgment should be, and hereby is **GRANTED in part** and **DENIED in part**.

## I.

## BACKGROUND [1]

Defendant Rock–Tenn is a paperboard and packaging manufacturer, and operates a mill in south Dallas. On September 9, 2008, then-employee Michael Scott ("Scott") filed a Charge of Discrimination (the "Charge") with the EEOC, alleging Rock–Tenn discriminated and retaliated against him based on his race, African–American.[2] Def.'s App. 870, ECF No. 97 ("Def.'s App."). Scott's Charge outlined the relevant alleged discriminatory conduct as the use of a racial epithet by his supervisor, the presence of racist graffiti in the workplace, and the discovery of a noose at his work station. *Id.*

Over the next year and a half, the EEOC investigated Scott's Charge of Discrimination and concluded that fifteen other similarly situated individuals working at Rock–Tenn had also been subjected to harassment and discrimination based on their African–American race. Pl.'s Mot. Partial Summ. J. 6, ECF No. 91 ("Pl.'s Br."). The EEOC's investigation culminated in a finding that RockTenn had discriminated against Scott and other similarly situated individuals by subjecting them to unwelcome racial harassment. *Id.* Accordingly, on April 29, 2010, the EEOC issued its findings in a Letter of Determination, accompanied by a Proposed Conciliation Agreement. *Id.*; see also Def.'s App. 836–50. The Proposed Conciliation Agreement sought a variety of remedial, and monetary relief. Def.'s App. 839–50.

During the next several months, the parties remained in communication and exchanged correspondence in an attempt to achieve early conciliation of this dispute. Ultimately, however, conciliation efforts failed. As a result, the EEOC filed the instant suit on September 30, 2010, alleging that Rock–Tenn unlawfully discriminated against Scott and thirteen of the original fifteen similarly situated individuals (collectively "Plaintiffs") based on their race, by fostering a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964. On May 29, 2012, the EEOC filed its Motion for Partial Summary Judgment. On May 30, 2012, Rock–Tenn filed its Motion for Summary Judgment. Both motions have been fully briefed by the parties and are now ripe for consideration.

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(c); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.,* 919

---

1. The facts are derived from Plaintiff's Amended Complaint, the parties' pleadings, and from the evidence contained in the summary judgment record. Unless characterized as a contention by one of the parties, these facts are undisputed.

2. The parties agree that the EEOC, on behalf of Scott and the class of similarly situated individuals, has not alleged any claims for retaliation. *See Pl.'s Am. Compl.* The only claim at issue in this case is the alleged discrimination based on the creation of a hostile work environment.

F.2d 301, 303 (5th Cir.1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must go beyond the mere pleadings and "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original) (quoting Fed R. Civ. P. 56(e)); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The evidence presented by the nonmovant must "support each essential element of its claims on which it will bear the burden of proof at trial." *Munoz v. Orr,* 200 F.3d 291, 302 (5th Cir.2000). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the nonmovant. *Id.*

Where, however, a party seeks summary judgment with respect to an affirmative defense where it will have the burden at trial on that affirmative defense, the summary judgment burdens are different. *Rivers v. Graybill,* No. 3:06–CV–1128–D, 2008 WL 2548118, at *3 (N.D.Tex. June 24, 2008). When a party "who will have the burden of proof at trial concerning an affirmative defense seeks summary judgment based on that defense, he 'must establish beyond peradventure all of the essential elements of the ... defense.'" *Id.* (quoting *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.,* 878 F.Supp. 943, 962 (N.D.Tex.1995)) (internal quotation marks omitted).

## III.

## ROCK–TENN'S MOTION FOR SUMMARY JUDGMENT

The Court begins its analysis by addressing the issues raised in Defendant Rock–Tenn's Motion for Summary Judgment. Rock–Tenn moves for summary judgment on three grounds. First, the company argues that the EEOC failed to satisfy its statutory obligation to conciliate in good faith prior to bringing suit. Second, Rock–Tenn asserts the EEOC's hostile work environment claim fails on its merits. Third, Rock–Tenn argues Plaintiff Scott is judicially estopped from recovery in the present action. The EEOC's Partial Motion for Summary Judgment will be addressed *infra,* Part IV.

### A. Conciliation

Rock–Tenn first moves for summary judgment on the ground that the EEOC failed to conciliate its claims in good faith, and thus failed to satisfy all of its statutory obligations before filing suit. Rock–Tenn's assertion regarding the EEOC's failure to conciliate in good faith is twofold. First, Rock–Tenn argues the totality of the EEOC's correspondence and lack of cooperation with RockTenn are indicative of a general effort to "stonewall" the conciliation process. Def.'s Br. Supp. Mot. Summ. J. 12–16, ECF No. 96 ("Def.'s Br."). Second, Rock–Tenn argues specific acts by the EEOC constituted overt misrepresentations, in direct contravention of

the agency's duty to act in good faith. *Id.* at 15. To address Rock–Tenn's failure to conciliate argument, the Court will first summarize the relevant summary judgment evidence, and then apply the appropriate legal standards to the undisputed facts.

The conciliation process began on, or around, April 27, 2010 when Rock–Tenn sent the EEOC a letter requesting a brief meeting to discuss the charge of discrimination. Def.'s App. 852. Two days later, on April 29, 2010, Rock–Tenn sent the EEOC a second letter requesting additional information regarding the other similarly situated individuals.[3] *Id.* at 853–54. On that same day, the EEOC sent Rock–Tenn a letter of Determination ("Letter of Determination") along with an attached proposed Conciliation Agreement ("Proposed Conciliation Agreement"). Def.'s App. 836–50.

The Letter of Determination outlined the EEOC's reasons for determining that there was reasonable cause to believe that Title VII violations had occurred during Scott's employment with Rock–Tenn. In relevant part, the Letter of Determination states:

> [T]he evidence shows that Charging Party [Scott] was subjected to unwelcome racial comments by a supervisor. The evidence also shows that he was subjected to discrimination including racist graffiti and a noose at his workstation. Charging Party complained

about the harassment, but the Respondent [Rock–Tenn] failed to prevent the discriminatory conduct by taking prompt, effective remedial action to correct it.

*Id.* at 837. The Letter of Determination goes on to state that the EEOC "determined that similarly situated employees were also subjected to harassment and disparate treatment on the basis of their race, Black." *Id.*

The Proposed Conciliation Agreement outlined the distinct forms of relief the EEOC sought on behalf of Scott and the other similarly situated individuals. The EEOC sought non-monetary, remedial relief, by requesting that Rock–Tenn adopt a variety of practices aimed at eliminating racial harassment and discrimination in the workplace. This non-monetary relief included training, posting of notices, monitoring, and reporting procedures. *Id.* at 841–45. The EEOC also sought monetary relief for Scott in the amount of $270,000.00 for compensatory and punitive damages, and monetary relief for the similarly aggrieved individuals in the amount of $25,000.00 per individual. *Id.* at 844–45. In an attachment to the Proposed Conciliation Agreement, the EEOC also identified the fifteen (now thirteen) similarly situated aggrieved individuals it believed were also subjected to unlawful racial harassment and discrimination. *Id.* at 847.

---

**3.** Rock–Tenn presents somewhat conflicting evidence regarding whether the parties met to discuss the charge immediately following Rock–Tenn's April 27, 2010 letter. On the one hand, RockTenn points to deposition testimony of EEOC attorney Melanie Breen to support its position that no such meeting ever took place. *See* Def.'s App. 27, Breen Dep. 105:20–106:1, July 20, 2011. On the other hand, Rock–Tenn's own correspondence with the EEOC, dated April 29, 2010, states "Thank you for taking the time to visit with

me regarding the above-referenced matter.... Again, while I appreciate the information you provided me during our call...." Def.'s App. 853–54. It is simply unclear from the summary judgment record what "visit" or "call" Rock–Tenn refers to in its April 29 letter and whether the parties met or communicated with one another between Rock–Tenn's April 27, 2010 request and the issuance of the Letter of Determination and Proposed Conciliation Agreement on April 29, 2010.

In a letter dated May 3, 2010, Rock–Tenn acknowledged receipt of the Letter of Determination and Proposed Conciliation Agreement. *Id.* at 855–56. In its May 3, 2010 letter, RockTenn requested additional information concerning the similarly situated aggrieved individuals.[4] *Id.* The EEOC responded by letter, dated June 10, 2010. *Id.* at 857–58. In response to Rock–Tenn's request for more information, the EEOC disclosed, in relevant part, the following:

> In response to the request for more information in your letter, EEOC states that the evidence gathered during EEOC's investigation showed that this class of aggrieved individuals was subjected to a racially hostile work environment that included racist graffiti throughout the workplace—especially in the bathrooms and locker room, the use of racial slurs by co-workers and managers and nooses at an employee workstation. The class members indicated to the EEOC that these racial comments and incidents occurred during their employment with RockTenn. At least one of the aggrieved individuals used the company's 1–800 number to report a complaint of discrimination, but no action was taken in response to the complaint. Others of the aggrieved individuals indicated that they reported discriminatory treatment through the Respondent's union grievance process. Again, no prompt remedial action was taken. None of the aggrieved individuals indicated that the Respondent had provided training on employment discrimination matters.

*Id.* at 858. The June 10, 2010 letter also sought a counteroffer from Rock–Tenn to aid the conciliation process. *Id.* On June 16, 2010, Rock–Tenn sent a second letter, again requesting the same specific information about the similarly situated aggrieved individuals. *Id.* at 859–60. Rock–Tenn also stated its belief that the EEOC was not properly providing information necessary for RockTenn to engage in the conciliation process. *Id.* On June 18, 2010, the EEOC responded with a brief email seeking clarification of the details Rock–Tenn thought were necessary to engage in the conciliation process. *Id.* at 863. In response, Rock–Tenn sent a third letter on June 21, 2010 seeking the aforementioned additional information. *Id.* at 861–62. On June 25, 2010, the EEOC responded by email and stated its belief that it had provided Rock–Tenn with sufficient information to engage in the conciliation process and would not be providing any additional information. *Id.* at 863. Again, the EEOC requested a counteroffer from Rock–Tenn to further the conciliation process. *Id.*

On June 29, 2010, Rock–Tenn sent the EEOC a non-monetary counteroffer, outlining the remedial practices and procedures Rock–Tenn was willing to adopt. *Id.* at 864–65. Rock–Tenn's counteroffer did not include any monetary relief. *Id.* Over the next several weeks the EEOC and Rock–Tenn continued to remain in communication over whether more information could be provided and whether further counteroffers would be forthcoming. Among other requests, the EEOC inquired as to whether Rock–Tenn would be willing to propose any monetary relief, or would be willing to propose any monetary relief solely with respect to Scott. *Id.* at 866–68.

---

**4.** Specifically, Rock–Tenn requested "1. a brief statement of their particular allegations; 2. the witnesses, if any, to the alleged discriminatory and/or harassing conduct; 3. the dates on which the alleged discriminatory and/or harassing conduct commenced and ended; and 4. whether the individuals claim to have reported their complaints to the Company."

Rock–Tenn responded in part by acknowledging that it would not be proposing a monetary counteroffer unless the EEOC either "(1) provides RockTenn with the information RockTenn has repeatedly requested, or (2) dramatically reduces its conciliation offer. . . ." *Id.* Following the aforementioned exchanges, on August 11, 2010, the EEOC issued its Notice of Conciliation Failure. *Id.* at 851.

### 1. The Conciliation Requirement

The EEOC is authorized to bring suit on behalf of individuals to enforce Title VII, but prior to filing suit, the EEOC must first satisfy its statutory obligation to attempt conciliation with the employer. *EEOC v. Agro Distrib., LLC,* 555 F.3d 462, 468 (5th Cir.2009). The EEOC is directed to first "eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). Although not a jurisdictional prerequisite to filing suit, the Fifth Circuit has held that "the EEOC's conciliation requirement is a precondition to suit." *Agro,* 555 F.3d at 469.

In order to satisfy its obligation to conciliate in good faith, the EEOC must "(1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." *Id.* at 468 (citing *EEOC v. Klingler Elec. Corp.,* 636 F.2d 104, 107 (5th Cir.1981)). While the EEOC is required to attempt conciliation in good faith, "the form and substance of the EEOC's conciliation proposals are within the discretion of the EEOC and are not subject to judicial second-guessing." *EEOC v. First Midwest Bank, N.A.,* 14 F.Supp.2d 1028, 1031 (N.D.Ill.1998) (citing *EEOC v. Keco Indus., Inc.,* 748 F.2d 1097,

1102 (6th Cir.1984)); *see also EEOC v. Bloomberg, L.P.,* 751 F.Supp.2d 628, 637 (S.D.N.Y.2010) ("The Court's role in reviewing efforts to conciliate, while not inert, is modest; the EEOC, as the enforcement agency, has discretion to formulate conciliation efforts in each situation, but it must do so in good faith.") (citing *EEOC v. Sears, Roebuck & Co.,* 650 F.2d 14, 18–19 (2d Cir.1981)).

The Fifth Circuit and other courts have noted that when a court finds the EEOC failed to conciliate in good faith, the court is faced with one of two possibilities: either stay the action and allow for the parties to continue the conciliation process, or dismiss the case. *See Agro,* 555 F.3d at 469 ("Courts remain free to impose a stay for the EEOC to continue prematurely terminated negotiations, and where the EEOC fails to act in good faith, dismissal remains an appropriate sanction"); *see also Bloomberg,* 751 F.Supp.2d at 643 ("Ordinarily, when the EEOC has failed to meet its duty to conciliate, 'the preferred remedy is not dismissal but instead a stay of the action to permit such conciliation.' But when the EEOC fails to conciliate in good faith, courts have dismissed cases on that basis.") (citations omitted); *EEOC v. Hibbing Taconite Co.,* 266 F.R.D. 260, 273 (D.Minn.2009) (noting in the context of denying a motion for leave to amend to add a failure to conciliate defense that "[d]ismissal may also be an appropriate sanction under some extreme circumstances."). *But see First Midwest Bank,* 14 F.Supp.2d at 1031 ("If a district court finds improper conciliation efforts were made, the appropriate remedy is not dismissal, but a stay of the proceedings so that conciliation between the parties may take place.").

### 2. Analysis

Rock–Tenn argues it is entitled to summary judgment on the basis that the

EEOC failed to satisfy its statutory obligation to conciliate in good faith before filing suit. The Court construes Rock-Tenn's argument as a challenge to whether the EEOC properly "respond[ed] in a reasonable and flexible manner to the reasonable attitudes of the employer."[5] *Agro,* 555 F.3d at 468. Rock–Tenn argues it is entitled to summary judgment for failure to conciliate because the evidence shows the EEOC operated a general campaign of "stonewalling" and made explicit misrepresentations of evidence. Def.'s Br. 17.

■ The Court disagrees. It is undisputed that, after the EEOC issued its Letter of Determination and Proposed Conciliation Agreement, the parties remained in contact and discussed the conciliation process for over three months. The EEOC's Proposed Conciliation Agreement requested three forms of relief: non-monetary relief; monetary relief for Scott; and monetary relief for the class. After receiving the Proposed Conciliation Agreement, Rock–Tenn sought additional information regarding the class of similarly situated aggrieved individuals. In Response, the EEOC provided additional information regarding the class—albeit without the specificity Rock–Tenn desired. From this point forward, it was clear the parties were in disagreement over what information was necessary to move the conciliation process to an amicable solution. Rock–Tenn then supplied its own counterproposal, containing only terms for non-monetary relief. The EEOC then asked Rock–Tenn to supplement their counterproposal with an amount of monetary relief for Scott and the class to move the negotiations forward. Rock–Tenn responded that it would only be willing to consider monetary relief if the EEOC provided additional

information or "drastically reduce[d]" its monetary offer. Def.'s App. 866–68. At this point, the conciliation process effectively failed.

■ While the EEOC is required to engage in the back-and-forth negotiations inherent in the conciliation process, "the EEOC is not required to 'disclose all of the underlying evidence . . . to the employer.' " *Bloomberg,* 751 F.Supp.2d at 639 (quoting *Hibbing Taconite,* 266 F.R.D. at 274). The EEOC must, however, disclose the outline of the class and provide the employer with sufficient information to understand the basis of the allegations and fully engage in the conciliation process. *See Hibbing Taconite,* 266 F.R.D. at 274 ("[T]he conciliation process requires that the EEOC provide the employer with sufficient information to assure that the employer knows the basis of the charge, and is able to participate in the conciliation process fully"); *EEOC v. Paramount Staffing, Inc.,* 601 F.Supp.2d 986, 990 (W.D.Tenn. March 9, 2009) (" 'As long as the outline of the class is identified, each [person] within the 'class' need not be specifically identified . . . .' ") (quoting *EEOC v. Cone Solvents, Inc.,* No. Civ. A. 3:04–0841, 2006 WL 1083406 at *9 (M.D.Tenn. April 21, 2006)). Here, the EEOC disclosed to Rock–Tenn the names of all the individuals in the class, and general information regarding their hostile work environment claim that was representative of the class as a whole—including the type of harassment and where it occurred, reporting efforts by employees, and remedial actions by Rock–Tenn.

While more specific information about the class and the EEOC's witnesses would have been beneficial from Rock–Tenn's

---

**5.** The Court notes that the EEOC outlined the reasonable cause for its belief that Title VII had been violated in its Letter of Determina- tion and provided an opportunity for voluntary compliance through its Proposed Conciliation Agreement.

perspective, the EEOC was not obligated to divulge additional details to satisfy its duty to conciliate in good faith. *See EEOC v. Champion Chevrolet,* No. 3:07–CV–444–ECR–VPC, 2009 WL 2835101 at *7 (D.Nev. Aug. 26, 2009) (finding the EEOC's conciliation efforts adequate and noting that "[t]he EEOC's failure to disclose the identities of potential witnesses should not have affected [the employer's] ability to consider the demand"); *Paramount Staffing, Inc.,* 601 F.Supp.2d at 990 (finding the EEOC sufficiently outlined the class and conciliated in good faith even though it refused to identify individual members of the class). Instead, once it became clear that Rock–Tenn would not be willing to provide monetary relief to either Scott or the class without "drastic" steps taken by the EEOC, the EEOC was free to interpret Rock–Tenn's position as a rejection of its proposal and terminate the conciliation process. *See Paramount Staffing,* 601 F.Supp.2d at 990 ("Once Defendant rejected Plaintiff's proposal, Plaintiff had no further duty to pursue conciliation and was free to file suit.") (citing *EEOC v. Keco Indus., Inc.,* 748 F.2d 1097, 1101–02 (6th Cir.1984)); *Bloomberg,* 751 F.Supp.2d at 640 ("Merely divergent monetary proposals alone may not be enough to declare conciliation futile.... But when the parties' proposals and discussion are so divergent as to seem irreconcilable, the courts will not require the EEOC to [continue] to conciliate.").

The Court is also not persuaded by Rock–Tenn's second contention that the EEOC made overt misrepresentations that would indicate a failure to conciliate in good faith. Rock–Tenn points to the EEOC's June 10, 2010 letter clarifying information about the class. Rock–Tenn argues the EEOC's statement that the class was "subjected to a racially hostile work environment that included racist graffiti throughout the workplace ..., the

use of racial slurs by co-workers and managers and nooses at an employee workstation" was a material misrepresentations of the facts because "only 4 of the Represented Parties claim they ever saw a noose and most deny being subjected to racial slurs." Def.'s Br. 15. Rock–Tenn's interpretation of the EEOC's statement is more strained than it is reasonable. The Court does not find that the most reasonable conclusion to be drawn from the EEOC's statement is that each member of the class was subjected to racist graffiti, *and* racial slurs, *and* nooses at each of their workstations. Rather, the more reasonable interpretation of the EEOC's statement is that such forms of harassment were experienced in some combination by each of the members of the class. While the EEOC's letter could have certainly been drafted with greater precision, finding a wholesale failure to conciliate in good faith based on one ambiguous sentence in one letter would be improper.

Similarly, the Court is also not persuaded by Rock–Tenn's argument that the EEOC, bringing suit on behalf of individuals who may have possibly denied being discriminated against supports a finding of a failure to conciliate in good faith. Rock–Tenn argues the EEOC should not have sought the same monetary relief for members of the class who responded "No" to a question of whether they had been subjected to racial harassment and discrimination but did indicate that they witnessed racist graffiti while working at Rock–Tenn. Def.'s Br. 15–16. As noted, the substance of the EEOC's proposals are not subject to second-guessing and such evidence goes more to the question of whether there exists a genuine issue of material fact with regards to the merits of the EEOC's hostile work environment claim, not to whether the EEOC properly conciliated in good faith.

In sum, simply because the parties failed ultimately to reach a settlement through the conciliation process does not mean either party necessarily failed to act in good faith. Even early in the negotiation process, parties may discover, in good faith, intractable differences that make the chances of conciliation remote. Despite finding such differences in this case, the parties continued to conciliate and the EEOC responded to Rock–Tenn's request for information, only terminating the conciliation process once it became clear Rock–Tenn had effectively rejected their entreaties for monetary relief. *Cf. Bloomberg,* 751 F.Supp.2d at 640–42 (finding the EEOC failed to conciliate its retaliation claims in good faith where the EEOC refused to provide any additional information about the class until the employer provided a monetary counteroffer); *First Midwest Bank,* 14 F.Supp.2d at 1033 (finding the EEOC failed to conciliate in good faith where the EEOC failed to provide the employer with additional information about the class, quadrupled its monetary demand without explanation, and imposed arbitrary deadlines on the employer). Thus, Rock–Tenn has failed to produce sufficient undisputed summary judgment evidence showing that the EEOC failed satisfy its condition precedent to suit to conciliate in good faith—either by generally "stonewalling" Rock–Tenn during negotiations or by making material misrepresentations. Accordingly, Rock–Tenn's Motion for Summary Judgment on the grounds the EEOC failed to conciliate in good faith is **DENIED.**

### B. Hostile Work Environment

Rock–Tenn next moves for summary judgment on a number grounds with respect to Plaintiffs' hostile work environment claims. Specifically, Rock–Tenn moves for summary judgment on the following grounds: (1) Plaintiffs' claims are time-barred; (2) Plaintiffs failed to establish they experienced harassment sufficient to affect a term, condition, or privilege of employment; (3) Plaintiffs failed to establish Rock–Tenn knew or should have known of the alleged harassment and failed to take prompt remedial action; and (4) Rock–Tenn exercised reasonable care to prevent and correct alleged harassment and Plaintiffs failed to reasonably utilize Rock–Tenn's internal complaint procedures. Accordingly, the Court will summarize the relevant summary judgment evidence and then proceed to address each of Rock–Tenn's bases for moving for summary judgment in turn.

Plaintiffs allege that a multitude of incidents involving race-based harassment created a hostile work environment while they were employed at Rock–Tenn. Generally, Plaintiffs allege the racial harassment occurred in the following forms: racial graffiti, derogatory or offensive verbal comments, and the presence of a noose. In their depositions, Plaintiffs swore to witnessing racial graffiti on Rock–Tenn's premises at various times between late 2007 and 2009, and some stated it had been present for a number of years prior.[6] *See* Pl.'s App. 1, 8, 74, 139, 149, 155, 162, 175, 184, 193, 207, 217, ECF No. 109 ("Pl.'s App."); *see also* Def.'s App. 61, 193, 296, 380, 618. The racist graffiti observed by Plaintiffs included various derogatory phrases incorporating the racial slur "nigger," the letters "KKK," and images of nooses, Confederate flags, and swastikas.

---

**6.** The Court notes that at this stage, it need not parse through all the summary judgment evidence and determine its admissibility since the Court only relies on the admissible evidence that it discusses herein. *See Arrieta v.* *Yellow Transp., Inc.,* No. 3:05–CV–2271–D, 2008 WL 5220569, at *25 n. 35 (N.D.Tex. Dec. 12, 2008), *aff'd,* 670 F.3d 644 (5th Cir. 2012).

*Id.* In his Charge, Scott also refers to an incident on June 12, 2007, when he was called a "nigger" by one of his white supervisors. Pl.'s App. 8. Scott also alleges that in June 2008, he found a noose at his work station. *Id.* Scott notes that both incidences were reported to a supervisor. *Id.* In addition to observing racist graffiti, some of the other Plaintiffs also allege that they were aware of the noose incident at Scott's work station and were subjected to other instances of racial harassment. Such incidents allegedly included racially offensive comments from co-workers and supervisors, and perhaps most egregious, an allegation that a former Rock–Tenn employee placed a newspaper clipping about the 1998 dragging death of James Byrd, Jr. in Jasper, Texas on his locker and told him "You're the next one to be drug down here." Pl.'s App. 135.

### 1. *Time–Based Limitations*

Rock–Tenn argues it is entitled to summary judgment—at least in part—on Plaintiffs claims because some of Plaintiffs' allegations fall outside the permissible statutory window for Title VII claims and because Plaintiffs did not properly allege and show a continuing violation of Title VII to allow such time-barred claims to be admissible. Def.'s Br. 19.

Title VII requires that an employee file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory practice. *See* 42 U.S.C.A. 2000e–5(e)(1) (West 2003); *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir.2003). The Supreme Court has noted, however, that the unique nature of hostile work environment claims—as opposed to claims based on discrete discriminatory acts—necessitates a more delicate approach to Title VII's statutory time period. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)

("Hostile work environment claims are different in kind from discrete acts."). A hostile work environment claim constitutes but a single unlawful employment practice, however, it is composed of a series of separate acts. *Morgan,* 536 U.S. at 117, 122 S.Ct. 2061. Therefore, because "[a] hostile work environment claim necessarily involves 'the cumulative effect of individual acts'" the evidence presented to support such claims may fall outside of the statutory time period. *Abner v. Kansas City S. R.R.,* 513 F.3d 154, 166 (5th Cir.2008) (alterations omitted) (quoting *Morgan,* 536 U.S. at 115, 122 S.Ct. 2061). A plaintiff cannot, however, rely entirely on evidence outside the time period; he or she must still provide that "an act contributing to the claim occur[red] within the filing period...." *Morgan,* 536 U.S. at 117, 122 S.Ct. 2061. Therefore, in the context of hostile work environment claims, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of *any act* that is part of the hostile work environment." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (emphasis added).

The Fifth Circuit has interpreted *Morgan*'s evidentiary standard with respect to hostile work environment claims in accordance with the "continuing violation" doctrine. The contours of the continuing violation doctrine in the context of hostile work environment claims are by no means easily discernable. Prior to *Morgan,* the Fifth Circuit arguably placed a heavier burden on plaintiffs to introduce evidence of the hostile work environment that occurred beyond the statutory period. In *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343 (5th Cir.2001), the Fifth Circuit stated that "the burden is upon each of the [plaintiffs] to offer evidence that they suffered race-base[d] harassment both prior [to] and during the filing period,

that the incidents of harassment were related, *and* that the harassment was pursuant to an organized scheme." 266 F.3d at 353 (emphasis added) (citing *Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir.1998)). In affirming in part the Ninth Circuit, the Supreme Court in *Morgan,* however, did not clarify whether such a standard was still permissible, only noting that the acts falling inside and outside of the statutory period must be "part of the same actionable hostile work environment practice." 536 U.S. at 120, 122 S.Ct. 2061; *see also Celestine v. Petroleos De Venezuela SA,* 108 Fed.Appx. 180, 186–87 (5th Cir.2004) (hereinafter *"Celestine II"*) ("It may be that the standard to be applied to hostile work environment claims in related cases should be less demanding after Morgan. However, this Court has not yet arrived at that decision. . . ."). As a result, the Fifth Circuit has continued to recognize a limited application of the continuing violation doctrine to hostile work environment claims. *See Abner,* 513 F.3d at n. 67 (noting that the district court's decision to allow acts outside the statutory period "did not violate *Celestine or Morgan,* nor did it fail to apply the principles of *Celestine* and *Morgan* to determine whether the continuing violation doctrine should apply"); *see also Celestine II,* 108 Fed.Appx. at 187 n. 10 ("Even after the Supreme Court's Morgan decision, this Circuit continues to apply the continuing violation doctrine to hostile work environment claims, and to cite Celestine as the proper statement of applicable law."). The EEOC mistakenly disregards Celestine and relies on case law involving discrete discriminatory acts (i.e. promotions, terminations, compensation etc.)—and where hostile work environment claims were not at issue—to argue Celestine was abrogated by *Morgan* and is thus inapplicable in the present context. Pl.'s Resp. Br. 26 (citing *McKenzie v. St. Tam-* *many Parish Sch. Bd.,* No. 04–0429–SS, 2006 WL 2054391 (E.D.La. July 19, 2006)).

While *Celestine* was not entirely overturned by *Morgan,* the Fifth Circuit has made it clear that the continuing violation doctrine with respect to hostile work environment claims is more properly addressed through a post-*Morgan* lens. In *Stewart v. Mississippi Transportation Commission,* 586 F.3d 321 (5th Cir.2009), the Fifth Circuit noted that the hostile work environment evidentiary standard announced in *Morgan,* was a " 'continuing violation' doctrine" but remained limited in three ways. The Fifth Circuit stated that the separate acts that constitute the hostile work environment must be related and continuous, and the continuing violation doctrine must be tempered by the court's equitable powers. *Stewart,* 586 F.3d at 328; *see Filer v. Donley,* 690 F.3d 643, 647 (5th Cir.2012) ("To apply this 'continuing violation doctrine . . . the plaintiff must demonstrate that the separate acts are related.' ").

█ Here, there remains a genuine issue of material fact as to whether each of the Plaintiffs were subjected to a discriminatory act as a part of the alleged hostile work environment during the statutory time period. Scott filed his charge on September 9, 2008, and no other Plaintiffs filed charges with the EEOC. Pl.'s App. 8. Accordingly, each Plaintiff must have suffered from an act of racial harassment contributing to the hostile work environment within 300 days of Scott's filing with the EEOC, or November 13, 2007. After a careful review of the summary judgment evidence, almost all of the Plaintiffs clearly stated they observed racist graffiti at Rock–Tenn at some point in time from late 2007 to 2009 and many indicated that they were aware of the noose incident. Only the deposition testimony of Plaintiff Colquitt Davis is unclear, as he stated only

that there was graffiti present when Chuck Johnstone and Mike Cammenga were general managers, but failed to provide a precise date. Def.'s App. 193, 199. Accordingly, the Court finds there remains a genuine issue of material fact as to whether all of the Plaintiffs were subjected to race-based harassment within the applicable statutory time period.

■ With respect to additional acts outside the statutory period, the Court finds those acts permissibly related to the exhausted claims stated in Scott's Charge and sufficiently continuous to be permissible under the continuing violation doctrine.[7] The allegations of persistent racist graffiti over the past years, if not decades, in the Rock–Tenn bathrooms and locker room are clearly related to the racist graffiti observed by Scott and stated in his Charge.

■ Nonetheless, the Court reaches a different conclusion with respect to the alleged acts of verbal abuse or otherwise offensive and derogatory conduct towards the Plaintiffs that occurred outside the statutory time period. Such isolated events, occurring as far back as 1998, are insufficiently related to Scott's Charge and the present hostile work environment. They are also not continuous as they were allegedly made by different individuals. The Court notes, however, that even if some of the earlier alleged acts that occurred outside the statutory time period are not a part of the same unlawful employment practice, they may still be admissible as background evidence to support the hostile work environment claim. *See Austion v. City of Clarksville,* 244 Fed. App'x 639, 650–51 (6th Cir.2007) (citing

*Morgan,* 536 U.S. at 113, 117, 122 S.Ct. 2061).

### 2. Sufficiency of Allegations of Harassment

In order to state a hostile work environment claim based on race, each plaintiff must prove: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Arrieta v. Yellow Transp. Inc.,* No. 3:05–CV–2271–D, 2008 WL 5220569, at *23 (N.D.Tex. Dec. 12, 2008) (citing *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002)), *aff'd,* 670 F.3d 644 (5th Cir.2012). "For harassment on the basis of race to affect a term, condition, or privilege of employment ... it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at *24 (internal quotation marks omitted) (quoting *Ramsey,* 286 F.3d at 268). Defendants argue Plaintiffs have failed to show they were subjected to harassment sufficiently severe or pervasive to affect the conditions of their employment.

To be sufficiently severe or pervasive to alter the conditions of one's employment, the harassment complained of must be both objectively and subjectively offensive. *EEOC v. WC & M Enters., Inc.,* 496 F.3d 393, 399 (5th Cir.2007) (citing *Harris v. Forklift Sys.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Therefore, "not only must the victim perceive the environment as hostile, the conduct must

---

**7.** This does not mean, however, that some of the alleged acts may be impermissible on other grounds.

also be such that a reasonable person would find it to be hostile or abusive." *Id.* (citing *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367). In determining whether an environment was objectively hostile, courts look to the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether the discriminatory conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the discriminatory conduct interfered with the employee's work performance. *Id.* (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367). "Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment." *Id.* (citing *Harvill v. Westward Commc'ns L.L.C.,* 433 F.3d 428, 435–36 (5th Cir. 2005)). The end result of the discriminatory conduct need not be an economic or tangible effect for there to be an actionable hostile work environment claim. *Id.* (citing *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Such result is merely a factor to be considered under the totality of the circumstances. *Id.* (citing *Mota v. Univ. of Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 524 n. 33 (5th Cir.2001)).

▮ The Court finds that there exists a genuine issue of material fact as to whether the racial graffiti and noose alleged to have been present at Rock–Tenn were sufficiently severe or pervasive to create a hostile work environment. The graffiti allegedly observed at Rock–Tenn over the course of several years included specific imagery associated with racial violence against, and intimidation of, African–Americans, including the "KKK" and swastikas. *See, e.g.,* Pl.'s App. 114–15, 127–28, 138–40, 149, 155, 175–76, 184, 191,

207, 264–65. Furthermore, the various phrases incorporating the racial epithet "nigger," express the nadir human civility and fall squarely in the severe end of the offensive spectrum. *See Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 185 (4th Cir.2001) ("Far more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African–Americans. Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' . . . .") (internal quotation marks omitted); *Tademy v. Union Pac. Corp.,* 614 F.3d 1132, 1145 (10th Cir.2008) ("Indeed, it is difficult to imagine a message more calculated to make an African–American feel unwelcome in the workplace than 'nigger' engraved in his or her individual workspace."). Such phrases including "nigger, go home," "we coming to get you niggers," "die nigger die," allegedly observed by the Plaintiffs certainly possessed a physically threatening or humiliating quality beyond that of a mere offensive utterance. Pl.'s App. 138, 149, 264–65.

In addition, the noose said to have been observed by Scott and others may also contribute to a finding by a reasonable jury that the Plaintiffs were subjected to harassment severe and pervasive enough to constitute a hostile work environment. Pl.'s App. 8, 203. Just as the word "nigger" operates as an abhorrent form of intimidation and harassment, so too does the imagery of a noose. *See Abner,* 513 F.3d at 167–68 (noting that the presence of wires in the shape of nooses and racially derogatory language could be sufficient evidence of a hostile work environment); *see also Williams v. New York City Hous. Auth.,* 154 F.Supp.2d 820, 825 (S.D.N.Y. 2001) ("The hangman's noose remains a potent and threatening symbol for African–Americans, in part because the grim specter of racially motivated violence con-

tinues to manifest itself in present day hate crimes."). The Court further notes that, in the context of a hostile work environment claim, even if some of the Plaintiffs did not personally experience seeing the noose, evidence that they were aware of such harassment of others may still be relevant and permissible. *See Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 652–53 (5th Cir.2012) (discussing precedents where a plaintiff was allowed to introduce evidence of discrimination of others to support plaintiff's own hostile work environment claim).

Plaintiffs, including Scott, also alleged the conditions at Rock–Tenn had a subjectively adverse affect. For example, Scott claims the environment led him to feel "angry, upset and confused emotionally" and contributed to physical maladies such as insomnia, depression, and nausea. Pl.'s App. 296. Accordingly, under the totality of the circumstances, given the frequency and severity of the alleged harassment—including the continuous presence of racist graffiti and the noose observed by Plaintiffs—the Court finds there exists a genuine issue of material fact regarding whether such alleged harassment was so severe and pervasive as to affect a term, condition, or privilege of employment.

### 3. Rock–Tenn's Knowledge and Remedial Action

To state a prima facie case of unlawful discrimination through the creation of hostile work environment, plaintiffs must also show their employer "knew or should have known of the harassment and failed to take prompt remedial action." *EEOC v. WC & M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir.2007). Rock–Tenn's argument in its Motion for Summary Judgment is twofold. First, Rock–Tenn argues that any unreported discreet acts of harassment by non-supervisory coworkers are not admissible on summary judgment because Rock–Tenn neither knew nor should have known of such harassment. Def.'s Br. 28. Second, Rock–Tenn argues it took prompt remedial action in response to reported incidences of harassment. *Id.*

Whether an employer is liable under Title VII for the discriminatory acts of its employees is determined by a negligence theory of liability. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("Negligence sets a minimum standard for employer liability under Title VII; . . . ."); *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir.1999) ("Generally, the negligence standard governs employer liability for *coworker* harassment."). A plaintiff may establish an employer's knowledge of the discriminatory conduct by demonstrating either actual or constructive notice to the employer. *See Griffin v. Delchamps, Inc.*, 176 F.3d 480, 1999 WL 155682, at *9 (5th Cir. March 12, 1999); *see also Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir.1998) ("Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's [response]."). The Fifth Circuit has noted that "[a]ctual notice can be proven by evidence that the plaintiff complained to someone in management with the authority to take remedial action, whereas constructive notice is demonstrated by showing that the harassment was sufficiently pervasive to give 'rise to the inference of knowledge or constructive knowledge' on the part of someone with remedial authority." *Griffin*, 1999 WL 155682, at *9 (internal citations omitted) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 478 (5th Cir.1989)). Once knowledge of the dis-

criminatory conduct is imputed to the employer, the plaintiff must show the employer failed to take prompt remedial action reasonably calculated to end the harassment. *See Stewart,* 586 F.3d at 329.

■■ In this case, the Court agrees with Rock–Tenn in noting that some of the alleged incidents cited by Plaintiffs should not be considered in determining whether Rock–Tenn adequately took prompt remedial action, because Rock–Tenn could not have been reasonably expected to have knowledge of their occurrence. These incidents include the unreported derogatory and offensive verbal comments allegedly made by co-workers to Plaintiffs in the years prior to the statutory period. For example, in his deposition, Plaintiff Jason Wiggins alleges another Rock–Tenn employee made offensive remarks towards him, including the statements: "I'm going to get rid of all the blacks and replace y'all with Hispanics because they don't talk back" and "[y]ou blacks are uncontrollable, untrainable." Pl.'s App. 123. Wiggins, however, admits that he never reported the incident to RockTenn management or human resources, nor did he file a grievance with his union. Pl.'s App. 123–24. Rock–Tenn cannot be expected to have knowledge of such isolated, unreported incidences and likewise, cannot be liable for failing to respond after they occurred.

■■ The same cannot be said, however, for all of the alleged discriminatory conduct that contributed to the hostile work environment. The summary judgment record demonstrates that Rock–Tenn possessed actual knowledge of the racist graffiti, and noose present on its premises. Pl.'s App. 1. The parties disagree, however, on when the graffiti was remedied. On the one hand, RockTenn maintains the graffiti was quickly painted over. Pl.'s App. 64b. For their part, however, Plaintiffs maintain the graffiti was often not remedied for months at a time and was not

eliminated until the bathrooms were remodeled in 2009. Pl.'s App. 49. The Court notes it is equally unclear in the summary judgment record whether and to what extent Rock–Tenn responded to the alleged noose.

In the context of racist graffiti, when graffiti is reported to the employer and the employer promptly removes the offending language, the employer has taken appropriate remedial action. *See, e.g., Pedigo v. Nat'l Cart Co.,* 95 Fed.Appx. 847, 848 (8th Cir.2004). Simply because the graffiti reoccurs, does not necessarily indicate that the employer's response was not reasonably calculated to end the harassment. *See Tademy v. Union Pac. Corp.,* 614 F.3d 1132, 1148 (10th Cir.2008). But if the graffiti remains over an extended period of time, or the employer's response is repeatedly ineffective in eliminating the racist graffiti, a fact question arises as to the reasonableness of the employer's response and whether additional investigative and ameliorative actions were warranted. *See Id.* at 1149 ("Although there may be difficulties with investigating anonymous acts of harassment, those difficulties at most present factual questions about the reasonableness of [the employer's] response; they are not sufficient to support a finding that [the employer] acted reasonably as a matter of law."). In this case, in viewing the evidence in the light most favorable to Plaintiffs, the Court finds a reasonable jury could find Rock–Tenn's alleged delay of over nine months to respond to repeated allegations of racist graffiti to have been unreasonable. Accordingly, the Court finds there exists a genuine issue of material fact as to whether Rock–Tenn reasonably responded to the alleged racist graffiti and noose that appeared on its premises.

*4. Rock–Tenn's Ellerth/Faragher Affirmative Defense*

Rock–Tenn also argues it is entitled to summary judgment based on its *El-*

*lerth/Faragher* affirmative defense. Def.'s Br. 28. In seeking summary judgment on its own affirmative defense, where it bears the burden of proof at trial, Rock–Tenn must prove all essential elements of its affirmative defense "beyond peradventure." *See Rivers v. Graybill,* No. 3:06–CV–1128–D, 2008 WL 2548118, at *3 (N.D.Tex. June 24, 2008). Under the *Ellerth/Faragher* affirmative defense, even if an employee is able to establish a prima facie case of discrimination, an employer will not be vicariously liable for harassment by a supervisor if the employer can show (1) the employer exercised reasonable care to prevent and correct promptly any harassment; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *Casiano v. AT & T Corp.,* 213 F.3d 278, 284 (5th Cir.2000) (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

To escape vicarious liability for the harassment of employees by supervisors, the *Ellerth/Faragher* affirmative defense requires an employer to prove both elements by a preponderance of the evidence. *Aryain v. Wal–Mart Stores Texas LP,* 534 F.3d 473, 483 (5th Cir.2008) (citing *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257). With respect to the first prong, reasonable steps to prevent and correct harassment may include the adoption of an official policy intended to discourage and discipline incidences of harassment. The mere adoption of a policy is insufficient; the policy must also be shown to have been effective. *Clark v. United Parcel Service,* 400 F.3d 341, 349 (6th Cir.2005) ("Prong one of the affirmative defense requires an inquiry that looks behind the face of a policy to determine whether the policy was effective in practice in reasonably preventing and correcting any harassing behavior.").

In this case, Rock–Tenn relies entirely on the policies it adopted to show it took reasonable steps to prevent and correct harassment. Def.'s Br. 29. In particular, Rock–Tenn states that it has "instituted, distributed, and posted policies prohibiting harassment, which provide several avenues for employees to make complaints of harassment, including through supervisors and managers, Human Resources, the Compliance Hotline 1–800 number, and the CBA grievance process." *Id.*; Def.'s App. 964–69. As noted above, *supra* Part III.B.3., there remains a genuine dispute of material fact as to whether Rock–Tenn's response to correcting the racist graffiti was prompt. Rock–Tenn alleges any reported graffiti was quickly removed, while Plaintiffs allege Rock–Tenn supervisors allowed for graffiti to remain for months and even up to a year. In a similar case involving racist graffiti contributing to a hostile work environment claim, Chief Judge Fitzwater noted the following:

> [The employer's] evidence of prompt remedial action consists largely of instances in which it painted over racial graffiti. Even if it is conceded that [the employer] removed graffiti on numerous occasions, there is a fact issue as to whether it did so promptly. Plaintiffs have offered evidence that some racially offensive graffiti went untouched for months.

*Arrieta v. Yellow Transp. Inc.,* No. 3:05–CV–2271–D, 2008 WL 5220569, at *28 (N.D.Tex. Dec. 12, 2008), *aff'd,* 670 F.3d 644 (5th Cir.2012). While the parties agreed Rock–Tenn ultimately remodeled its bathrooms to eliminate the presence of graffiti, and this remodel has been effective, there still remains a fact question as to whether this response—notably after

Scott filed his Charge and while the EEOC was conducting its investigation—was prompt in response to the numerous complaints. *See Bailey v. USF Holland, Inc.*, No. 3:05–0435, 2007 WL 470439, at *13 (M.D.Tenn. Feb. 8, 2007) (finding defendant's response to racist graffiti effective but insufficient since it was not implemented until after plaintiff filed suit), *aff'd*, 526 F.3d 880, 887 (6th Cir.2008). Also, the Court is unwilling to conclude as a matter of law that Rock–Tenn's policies alone were enough to prevent harassment, as Plaintiffs have alleged racist graffiti was present and reoccurring for years prior to 2008. Accordingly, the Court finds Rock–Tenn cannot prevail on its *Ellerth/Faragher* affirmative defense at the summary judgment stage because it failed to show that there is no genuine issue of material fact regarding whether Rock–Tenn exercised reasonable care to prevent and correct racial harassment on its premises. Because the Court finds Rock–Tenn has failed to satisfy its burden at the summary judgment stage as to the first prong of the *Ellerth/Faragher* affirmative defense, the Court need not address the second prong.

### C. Judicial Estoppel

The Court now turns to the issue of Rock–Tenn's judicial estoppel affirmative defense. Both the EEOC and Rock–Tenn have moved for summary judgment on Rock–Tenn's defense that Scott is estopped from pursuing this action because of an inconsistent position he took in a prior bankruptcy proceeding. Pl.'s Br. 39–42; Def.'s Br. 65–68. The Court notes again, that where RockTenn seeks summary judgment on an affirmative defense where it has the burden of proof at trial, the company must prove all elements of its defense "beyond peradventure". *See Rivers v. Graybill*, No. 3:06–CV1 128–D, 2008 WL 2548118, at *3 (N.D.Tex. June 24, 2008).

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." In re *Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir.2004) (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1998)). The doctrine is designed to protect against affronts to the integrity of the judicial system itself rather than the litigants in a particular case. In re *Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). Judicial estoppel attaches if the following conditions are met: "(1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir.2005). To show inadvertence, a party may prove either that he or she did not know of the inconsistent position, or that he or she had no motive to conceal it from the court. *Id.* at 600–01.

In this case, the time line of relevant events are as follows. Scott filed for Chapter 13 bankruptcy on May 6, 2005. Pl.'s App. 298. The bankruptcy court confirmed Scott's Chapter 13 bankruptcy plan on April 6, 2006. Def.'s App. 950. Scott began working for Rock–Tenn in July, 2006. *Id.* at 282. On September 9, 2008, Scott filed his charge with the EEOC. *Id.* at 8. On January 22, 2010, Scott received a discharge from Chapter 13 bankruptcy. *Id.* at 282. The EEOC issued its Letter of Determination on behalf of Scott on April 29, 2010, and after conciliation efforts failed, filed suit on September 30, 2010. In March 2011, Scott sought to reopen his bankruptcy to resolve issues related to his home mortgage lender. *Id.* at 283. On April 4, 2011, the bankruptcy court granted Scott's motion to reopen his Chapter 13

bankruptcy. *Id.; see also* Def.'s App. 948–56.

■■■ Key to whether Rock–Tenn's judicial estoppel defense applies in this case is the nature of Scott's duty to disclose as a bankruptcy debtor. The Fifth Circuit has noted that "[i]t goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" *In re Coastal Plains, Inc.,* 179 F.3d at 207–08. Furthermore, " '[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action.' " *Id.* at 208 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n,* 932 F.Supp. 859, 867 (E.D.Tex.1996)).

The question in this case then, is when a claim accrues after a Chapter 13 debtor's plan has been confirmed by the bankruptcy court, but before the debtor is discharged, does the debtor maintain his or her obligation to disclose all potential causes of action to the bankruptcy court. In looking to whether a court has accepted a plaintiff's prior inconsistent position, the Fifth Circuit in *In re Coastal Plains, Inc.,* quoted the Sixth Circuit in stating that " 'judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.' " *Id.* at 206 (quoting *Reynolds v. Comm'r of Internal Revenue,* 861 F.2d 469, 473 (6th Cir.1988)). More recently, in *In re Superior Crewboats, Inc.,* 374 F.3d, 330 (5th Cir.2004), the Fifth Circuit emphasized that the bankruptcy court had adopted the debtor's position of non-disclosure when it issued a "no-asset" discharge. 374 F.3d at 335. The Court, therefore, proceeds under this guidance from the Fifth Circuit.

■■■ Here, the elements of judicial estoppel are met by Rock–Tenn. First,

Scott clearly took inconsistent positions with this Court and the bankruptcy court by filing for Chapter 13 bankruptcy in 2005, filing a charge of discrimination in 2008, and receiving a discharge from bankruptcy in 2010, without informing the bankruptcy court of his pending charge. *See Kamont v. West,* 83 Fed.Appx. 1, 3 (5th Cir.2003) ("[Plaintiff] filed her fourth claim while the bankruptcy was pending, triggering a duty to amend her bankruptcy petition. . . . As she did not amend her petition, that claim is also estopped.").

Second, while it cannot be said that the bankruptcy court relied on Scott's inconsistent position at the time his bankruptcy plan was approved in 2006—simply because Scott's charge had not yet accrued—the bankruptcy court did rely on Scott's position that he had no other potential claims when it discharged his bankruptcy in 2010. Third, Scott's failure to disclose his claims to the bankruptcy court cannot be said to have been inadvertent. Once a motivation to conceal at the time of nondisclosure—such as a resulting financial benefit—is established by the defendant, the plaintiff must then show that omission of his or her claims was inadvertent. *Love v. Tyson Foods, Inc.,* 677 F.3d 258, 262 (5th Cir.2012). Here, any resulting benefit of the present lawsuit would benefit Scott and not his creditors. The EEOC argues Scott neither knew of his duty to disclose, nor was told by his bankruptcy attorney to disclose his present claims. Pl.'s Br. 41. A lack of awareness, even if a bankruptcy attorney fails to inform you of your duty to disclose, does not, however, equate to inadvertence. In re *Coastal Plains, Inc.,* 179 F.3d at 212. Furthermore, that Scott petitioned to reopen his bankruptcy to resolve his mortgage issues, fully supports the notion that Scott was aware of the continuing nature of his bankruptcy proceeding and could have easily notified the bankruptcy

court of his additional claims. Accordingly, Scott is estopped from individually pursuing the present suit and Rock–Tenn's Motion for Summary Judgment is **GRANTED** in that respect.[8]

In sum, Rock–Tenn's Motion for Summary Judgment is **GRANTED** with respect to its affirmative defense of judicial estoppel; **DENIED** with respect to its argument that the EEOC failed to satisfy its conciliation obligation, a condition precedent to filing suit; **DENIED** with respect to EEOC's hostile work environment claim; **DENIED** with respect to Rock–Tenn's statute of limitations affirmative defense, except as stated above; and **DE-NIED** with respect Rock–Tenn's *Ellerth/Faragher* affirmative defense.

### IV.

### PLAINTIFF EEOC's MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court now turns to the EEOC's Motion for Partial Summary Judgment (doc. 91). The EEOC moves for summary judgment on a number of Rock–Tenn's affirmative defenses, arguing that the affirmative defenses at issue "are conclusory allegations that are not supported by any facts in the record." Pl.'s Br. 2. The EEOC's motion targets the following of Rock–Tenn's affirmative defenses: waiver, unclean hands, laches, statute of limitations, failure to exhaust administrative

remedies and conciliate in good faith, and judicial estoppel.[9]

In deciding the EEOC's Motion for Partial Summary Judgment, the Court relies on the summary judgment standards enunciated *supra* Part II. Furthermore, the Court notes that Rule 12(f) of the Federal Rules of Civil Procedures provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.[ ]," and do so either sua sponte, or on a party's motion. Fed.R.Civ.P. 12(f). Rule 12(f) applies to complaints as well as affirmative defenses. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999). Motions to strike a portion of a pleading are generally viewed with disfavor and are seldom granted, as such motions seek a "drastic remedy" and are often "sought by the movant simply as a dilatory tactic." *FDIC v. Niblo*, 821 F.Supp. 441, 449 (N.D.Tex.1993) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir.1962)). The Federal Rules require that defenses be pleaded only in "short and plain terms." Fed. R.Civ.P. 8(b). Rule 8(c) requires a party responding to a pleading to "affirmatively state any avoidance or affirmative defense...." These pleading rules have been interpreted to require that affirmative defenses be pleaded "with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being

---

8. The Court also notes, however, that nothing precludes the EEOC from proceeding on its own to alleviate alleged unlawful discrimination perpetrated by Rock–Tenn against Scott. *See EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 682 (8th Cir.2012) ("[A] court cannot judicially estop the EEOC from bringing suit in its own name to remedy employment discrimination simply because the defendant-employer happened to discriminate against an employee who, herself, was properly judicially estopped.").

9. Where specific affirmative defenses or conditions precedent to suit asserted by Rock–Tenn and challenged by the EEOC overlap with previously discussed issues or affirmative defenses raised by RockTenn in its own Motion for Summary Judgment, the Court will note such overlap. Nothing, however, in the Court's analysis of the EEOC's Motion for Partial Summary Judgment alters or modifies the Court's rulings with respect to Rock–Tenn's own Motion for Summary Judgment, discussed *supra* Part III.

advanced." *Woodfield,* 193 F.3d at 362. Stated another way, parties "must allege sufficient facts to give [their opponent] fair notice of the nature of the affirmative defense and prevent unfair surprise." *EEOC v. Courtesy Bldg. Servs., Inc.,* No. 3:10–cv1911–D, 2011 WL 208408, at *2 (N.D.Tex. Jan. 21, 2011) (declining to apply the plausibility standard found in *Twombly* and *Iqbal* to affirmative defenses).

In this case, the EEOC moves for partial summary judgment on the following affirmative defenses as stated by Rock–Tenn[10]:

- Third Defense: Plaintiff's Amended Complaint is barred, in whole or in part, by the applicable statutes of limitation, and the doctrines of waiver, estoppel, laches, and unclean hands.

- Sixth Defense: To the extend Plaintiff's Title VII claims are based on events occurring more than 300 days prior to the date that Michael Scott filed his EEOC charge, such claims are barred by the statute of limitations set forth in 42 U.S.C. § 2000(e)–5(e), as Plaintiff failed to satisfy the statutory conditions precedent to litigation of such claims under Title VII.

- Seventh Defense: To the extent that this action is based on: (a) alleged incidents occurring prior to the applicable limitations period for the filing of an administrative charge of harassment and/or hostile work environment or (b) alleged incidents not listed in any administrative charge, Plaintiff may not recover any relief for such incidents of alleged discriminations because such claims are barred by the failure to exhaust the administrative remedies and are time-barred.

- Tenth Defense: Plaintiff and/or the parties the EEOC purports to represent failed to exhaust administrative remedies required by law.

- Eleventh Defense: Plaintiff's claims are barred by its failure to conciliate in good faith.

### A. Waiver, Unclean Hands, and Laches

The Court initially notes that Rock–Tenn's assertions of "waiver" and "unclean hands" arguably do not pass muster under the notice pleading standard in Rule 8 and can be stricken under Rule 12. The Court, however, interprets Rock–Tenn's "waiver" and "unclean hands" defenses as theories that the EEOC was barred from bringing suit after it allegedly failed to conciliate in good faith. As the Court noted in Part III, Section A, the Court finds the EEOC did conciliate in good faith, and therefore was not barred from bringing suit on behalf of Scott and the other similarly situated individuals.

 As for Rock–Tenn's laches defense, the defense of laches is an equitable doctrine that prevents a plaintiff from postponing the assertion of his or her rights. *See Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 708 (5th Cir.1994). To succeed on a defense of laches, a defendant must show "(1) a delay on the part of the plaintiff in instituting suit; (2) that is not excused; and (3) that results in undue prejudice to the defendant's ability to present an adequate defense." *Id.* (citing *Geyen v. Marsh,* 775 F.2d 1303, 1310 (5th Cir.1985)). The Fifth Circuit has noted that laches may bar the EEOC from bringing suit, but only if the EEOC has delayed unreason-

---

**10.** The Court notes that Rock–Tenn concedes that its Fourteenth Defense, failure to miti-gate, is moot. Def.'s Resp. Br. 20.

ably after completing conciliation. *Id.* (citing *Fowler v. Blue Bell, Inc.,* 596 F.2d 1276, 1279 (5th Cir.1979)). The Court finds the EEOC's two-month delay in filing suit on September 30, 2010 after ending conciliation on August 11, 2010 was not unreasonable. Furthermore, the Court finds no other basis—including the EEOC's 20–month investigation from the date of Scott's Charge to the date of its Letter of Determination—on which Rock–Tenn could assert the EEOC unreasonably delayed in bringing suit. Accordingly, the Court **GRANTS** the EEOC's Motion for Partial Summary Judgment with respect to Rock–Tenn's defenses of waiver, unclean hands, and laches.

### B. Statute of Limitations

As the Court outlined *supra* Part III.B., Rock–Tenn failed to show the EEOC's allegations of discrimination that occurred outside the 300–day filing period are time-barred. The Court discussed, *supra,* that the EEOC's hostile work environment claims were properly interpreted under the continuing violation theory. Accordingly, the Court **GRANTS** the EEOC's Motion for Partial Summary Judgment with respect to Rock–Tenn's defense that the EEOC's allegations are time-barred.[11]

### C. Failure to Exhaust Administrative Remedies and Conciliate in Good Faith

As the Court noted *supra* Part III.A., Rock–Tenn failed to show the EEOC failed to conciliate in good faith. For the same reasons the Court outlined, *supra,* the Court finds the EEOC has shown there exists no genuine issue of material fact that it failed to conciliate in good faith. Accordingly, the Court **GRANTS** the EEOC's Motion for Partial Summary Judgment with respect to RockTenn's affirmative defense of failure to satisfy the condition precedent to conciliate in good faith.

### D. Judicial Estoppel

As the Court noted *supra* Part III.C., Scott is barred from pursuing claims on his own behalf pursuant to the doctrine of judicial estoppel. Accordingly, the Court **DENIES** the EEOC's Motion for Partial Summary Judgment with respect to Rock–Tenn's judicial estoppel defense.

## IV.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS in part** and **DENIES in part** RockTenn's Motion for Summary Judgment. Rock–Tenn's Motion for Summary Judgment is **GRANTED** with respect to its affirmative defense of judicial estoppel; **DENIED** with respect to its affirmative defense that the EEOC failed to satisfy its conciliation obligation, a condition precedent to filing suit; **DENIED** with respect to EEOC's hostile work environment claim; **DENIED** with respect to Rock–Tenn's statute of limitations affirmative defense, except as stated above; and **DENIED** with respect Rock–Tenn's *Ellerth/Faragher* affirmative defense.

The Court **GRANTS in part** and **DENIES in part** the EEOC's Motion for Partial Summary Judgment. The Court **GRANTS** the EEOC's Motion with respect

---

**11.** The narrow exception to finding the EEOC's claims timely filed, as discussed in Part III.B. above, is with respect to the alleged acts of verbal abuse or otherwise offensive and derogatory conduct towards the Plaintiffs that occurred outside the statutory time period. As mentioned, such isolated events, occurring as far back as 1998, are insufficiently related to Scott's Charge and the present hostile work environment. Nor are they continuous as they were allegedly made by different individuals.

to Rock–Tenn's affirmative defenses of waiver, unclean hands, laches, statute of limitations, failure to exhaust administrative remedies, and failure to conciliate. The Court **DENIES** the EEOC's Motion with respect to RockTenn's judicial estoppel defense as to Michael Scott.

To sum up, the EEOC's Title VII hostile work environment claim survives summary judgment as the Court finds there exist genuine issues of material fact as to the underlying merits of the hostile work environment claim. The Court also finds there exist triable issues of genuine material fact as to Rock–Tenn's *Ellerth/Faragher* Defense.

**SO ORDERED.**